## MOON v. STATE.

### Opinion delivered November 20, 1922.

1. CRIMINAL LAW—USE OF MOTION FOR CONTINUANCE IN ARGUMENT.
—It was error to permit the prosecuting attorney to use defend-
ant's motion for continuance in his argument to the jury where
it does not appear that the motion was introduced in evidence;
and such use of the motion was prejudicial where it was calcu-
lated to cause the jury to believe that defendant had sworn
falsely.

2. SEDUCTION—TESTIMONY AS TO GENERAL REPUTATION OF PROSECU-
TRIX.—In a prosecution for seduction, in which defendant had
made no attack upon the general reputation of the prosecutrix
for truth or morality, it was error to permit the State to prove
the prosecutrix's general reputation as to morality; the court
should have confined the State to proof of her general reputa-
tion for chastity in the community in which she lived.

Appeal from White Circuit Court; *J. M. Jackson,*
Judge; reversed.

*Brundidge & Neelly,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and
*Wm. T. Hammock,* Assistants, for appellee.

WOOD, J. This is an appeal from a conviction of
appellant under an indictment which in good form
charged him with the crime of seduction alleged to have
been committed against the person of one Clytie Du-
Priest. The appellant was indicted on the 19th day of
July, 1921. On the 26th day of July, 1921, he filed a mo-
tion for a continuance in which he set up that he could
not safely go to trial at that term of the court on ac-
count of the absence of Jewell Moon, Lloyd Casteel and
Dewey Wilkerson. He set up that these witnesses were
temporarily absent from the State working in the har-
vest fields of Kansas; that if present they would testify
that they had known the prosecutrix for some years;
that they had been with her and had observed her con-
duct at dances and other public gatherings, and, if pres-
ent, they would testify that they knew that she had been
guilty of acts of unchastity and that she was a woman
of easy virtue; that Jewell Moon, if present, would tes-

tify that Clytie DuPriest admitted to her (Jewell Moon) that she was not chaste, but had been guilty of adultery; that she was forced to leave home by her father on account of her disobedience and her imprudent acts with men.

The motion was in proper form. It was granted and the cause continued until the 11th of July, 1922. The bill of exceptions recites the following: "During the argument of the case the prosecuting attorney read to the jury a motion for a continuance filed at the July, 1921, term of the court, to the reading of which said motion counsel for defendant objected as being prejudicial to the defendant, which said objections were by the court overruled, to which ruling of the court defendant at the time excepted and caused said exceptions to be duly noted of record."

The State introduced testimony tending to prove that the appellant had sexual intercourse with the prosecuting witness under an express promise of marriage, which he failed to carry out; that the prosecuting witness at that time was chaste; that she had never had sexual intercourse with any one else before or since.

The appellant introduced testimony tending to impeach the chastity of the prosecutrix. One witness, Edson Blakely, testified that on one occasion prior to the alleged intercourse between the appellant and the prosecutrix she heard the prosecutrix begging Lloyd Casteel to take her to Conway; that Casteel told her he could not quit school, and could not carry her any way if he had the money, and the prosecutrix said to him, "I am sure you will get your money's worth."

The State in rebuttal called Lloyd Casteel as a witness, who testified that he had known the prosecutrix four or five years, and that he was acquainted with her general reputation for morality in the community where she lived; that it was fairly good. He went with her a few times. He remembered when she tried to get him to take her to Conway. She told the witness that she

didn't have any money, but that she wanted some of her friends to take her there that didn't have to have money. Witness didn't think she said anything about witness getting his money's worth. The appellant testified that he had never had sexual intercourse with the prosecutrix.

1. The appellant contends that the court erred in allowing the prosecuting attorney to read and comment in his argument on the motion for continuance. If, as the Attorney General contends, the motion for continuance had been introduced as evidence in the cause, then the prosecuting attorney would have had the right to use the same in his argument, even though the motion were incompetent. But, on the other hand, if the motion was not introduced as testimony in the cause, then the prosecuting attorney had no right to refer to the same in his argument. The record does not show that the motion was introduced in evidence. Such showing should appear affirmatively in the record and not be left to inference from the position where the motion is found in the transcript. The affirmative recital in the record is that the prosecuting attorney read the motion for a continuance in his argument, over the objection of the appellant. The court erred in permitting this to be done, and the error was a prejudicial one.

The appellant had sworn to the contents of the motion, which set up that Lloyd Casteel would testify, if he were present, that he knew that the prosecutrix had been guilty of acts of unchastity and and was a woman of easy virtue. Lloyd Casteel, at the trial, testified to the contrary. By permitting the prosecuting attorney to read the motion he was thus allowed to attack the credibility of the appellant without having first introduced the motion as testimony. The motion was not a part of the pleadings in the case and was not proper to be read as a pleading. The issue in the case was made up by the indictment and the appellant's plea of not guilty thereto. The use of the motion by the prosecuting attorney in argument was calculated to cause the jury to believe that

the appellant had sworn falsely because the witness
Casteel had not sworn at the trial as the appellant stated
he would swear in the motion for a continuance. This
improper use of the motion in argument might have
caused the jury to conclude that the appellant was un-
worthy of belief, and therefore its tendency was to de-
stroy the force and effect of appellant's testimony. If
the State desired to use the motion to contradict the
testimony of the appellant and to thus impeach his tes-
timony, it should have introduced the motion as evi-
dence in the cause. See *Baker* v. *State*, 85 Ark. 300;
*Weaver* v. *State,* 83 Ark. 119; 38 Cyc. 492.

2. The State, in rebuttal, was permitted, over the
objection of appellant, to ask certain witnesses the fol-
lowing question: "Were you familiar with the general
reputation she (prosecutrix) bears in that community
as to her morals?" The appellant objected because
"there was no attack upon her general character at all."
The answer to the question was: "Her reputation is
good."

In *Polk* v. *State,* 40 Ark. 482-487, we held: "The de-
fendant may prove particular acts of immorality or in-
decorum, as well as her general bad character. But the
inquiry must be confined to the period preceding the de-
fendant's misconduct. * * * In rebuttal the State may
prove her previous purity by her own testimony. * * *
It may be further shown that she was a woman of good
character, of correct and modest deportment, and that,
until the occurrence with the defendant, she was con-
sidered by her acquaintances to be virtuous."

Since the appellant made no attack upon the char
acter or reputation of the prosecutrix for morality in
general, the court should have confined the State in re-
buttal to proof of her general reputation for chastity in
the community in which she lived. As is said in *State* v.
*Hummer,* 128 Ia. 505, at page 507, "The reputation for
morality which, under the authority of these cases, may be
shown in rebuttal of evidence tending to prove specific

acts of lewdness or unchastity, is a reputation for morality in the sexual relations, that is, a reputation for sexual virtue, and not merely reputation as to general good moral character." See also the authorities there cited.

We have a statute which provides that "evidence of the good character of a witness is inadmissible until his general reputation has been impeached." Sec. 4189, C. & M. Digest. In *Lockett* v. *State*, 136 Ark. 473, we held on rehearing, at page 480, that proof of good character in support of the credibility of a witness could not be introduced until the general reputation of the witness had been impeached." Here the appellant made no attack upon the general reputation of the prosecutrix for truth or morality. The appellant had only attacked her character for chastity, and the State, in rebuttal, should have been confined to proof of her general reputation for chastity. Testimony as to her general reputation for truth and morality was not in rebuttal of the specific proof made by the appellant that the prosecutrix was an unchaste woman, that is, lacking in sexual virtue. In *Polk* v. *State, supra,* we said at page 486, "In every prosecution for seduction the character of the seduced female is involved in the issue. And character means, in this connection, not her general reputation in the community, but the possession of actual personal chastity."

For the errors indicated the judgment is reversed, and the cause is remanded for a new trial.