HARRY CAMBRON v. STATE.

No. A-11024.  May 19, 1948.
(193 P. 2d 888.)

438

Homer Cowan, of Norman, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. This is an appeal by Harry Cambron, defendant below, from a conviction for first degree rape allegedly committed upon the person of Lavina June Belden of the age of twelve years. This prosecution was instituted by criminal complaint filed on May 15, 1947, in the county court before Sylvester Grim, county judge in and for Cleveland county, Okla., and by information filed on May 27, 1947, in the district court before Honorable Justin Hinshaw, district judge of Cleveland county, Okla. The complaint and information both allege that on or about the 1st day of May, 1947, within the jurisdiction of the district court of Cleveland county the defendant Harry Cambron did "accomplish the act of sex-

ual intercourse with, carnally know and rape one Lavina June Belden, * * * of the age of twelve (12) years, and not the wife of him," the said defendant. At the conclusion of the trial the jury found the defendant guilty and fixed his punishment at imprisonment in the State Penitentiary for the minimum penalty of fifteen years and judgment and sentence was entered by the district court of Cleveland county in accord therewith.

This prosecution originated by the police of the city of Norman, Oklahoma, finding the prosecuting witness Lavina June Belden, a girl of twelve years of age, hanging around the interurban station at about 4 o'clock in the morning. They took her into custody and carried her home and turned her over to her parents. She testified that upon reaching her home she did not tell her father and mother anything in relation to the charge that was later lodged against Harry Cambron. The next day the police called for her and together with her parents she was taken to the police station where she was examined in relation to her conduct. Specific inquiry was made out of. the presence and hearing of Mr. and Mrs. Belden, by the police officers, as to whether or not she ever had relations with Harry Cambron. The record discloses that at first she stated that she had not had relations with Harry Cambron, but the police officers talked rough to her and she became frightened. One of the officers said he didn't believe her, the other said he did. Finally, she told them that she did have intercourse with the defendant. Upon the matters and things as disclosed in this inquiry, this prosecution was instituted.

The defendant makes numerous assignments of error but combines them under four propositions which he urges in his brief.

The first proposition is that the evidence is insufficient to sustain the verdict, judgment and sentence. This contention is grounded primarily upon the proposition that the prosecuting witness was not corroborated and that her testimony was not clear and convincing and bore upon its face inherent evidence of improbability, that it was contradictory and inconsistent. In this connection, at the outset, it is well to note that when the matter came on for oral argument and it was called to the Attorney General's attention that he had not filed a brief in this case, he stated in open court that it was not his intention to file a brief, that while he was not ready to confess error he was willing to let the matter stand upon the record and the brief of the attorney for the defendant. The contentions of the defendant and the attitude of the Attorney General are predicated upon the state of the record made in the trial below, as follows, to wit: The prosecuting witness Lavina June Belden testified that she was twelve years of age at the time the alleged rape is supposed to have ocurred on May 1, 1947. She first stated that she could not remember when she rode with Mr. Cambron in his automobile. Then she positively said she did not ride in his car on the 1st day of May. Then she stated that on that day she saw him about 3 o'clock in the evening, but that he did not stop and that she did not see him later on said day, but she did see him two days after. She finally said that about four weeks before the preliminary hearing she did get in a cab with Harry Cambron and that they rode out near the Boyd Dairy about 3:00 o'clock in the afternoon, and that when they got there he stopped his automobile, but did not do anything and then he went on, that at this time he did not say or do anything, that he just touched her on the arm, that he did not say anything,

that he stopped a second time and asked her if she wanted to go back, to which she said "Yes." That is all she said he did except take her back home, and that was the only time she was ever out near the Boyd Dairy with Harry Cambron. Then she testified that during this particular incident he did have sexual intercourse with her and almost immediately thereafter she said it was three days after they were at Boyd's Dairy that intercourse occurred on a "red dirt road on the way to Noble by a big haystack." There he held her hand and told her he would hurt her if she did not submit. Then she says he did not have intercourse with her at that time but at another time he did have intercourse with her by the Sooner Show. At another time six or seven miles east of Norman Harry Cambron had intercourse with her, that he brought her back to town and let her out by Woolworth's and that is the only time that he treated her in that manner. Then immediately thereafter in her testimony she said that was the second time and then stated that he had intercourse with her four or five times.

On cross-examination she stated that she "don't know why she told the police that what she did about Harry Cambron." She supposed it was because she was scared. That after they left the police station that she went to the sheriff's office and talked to him for a long time, that she was still scared and that after they had talked to him about three hours they went upstairs and filed a criminal complaint. Thereafter, on the 17th day of May, 1947, she made a signed sworn statement in the presence of witnesses to the effect that she did not have intercourse with the defendant, that Harry Cambron "has never bothered me or anything like that"; and that she did not know why she said that he had. The record discloses that though the prosecuting witness identified the signature

attached to the said statement as hers and admitted that she had stated that she had read the above statement and that it was true and she had signed it voluntarily of her own accord and that nobody was making her sign and no one was making any promise of any reward to her for making the statement, the statement was excluded as evidence on the ground that no proper foundation had been laid and for the reason that witness stated "she never saw it before today." On further cross-examination she admitted at the preliminary hearing she testified that out near the Boyd Dairy Cambron had sexual intercourse with her and that that was the only time he had intercourse with her. At the preliminary hearing she further testified that since the incident near Boyd's Dairy had occurred, she had never been out with him since and that she was telling the truth then. She admitted that earlier in her testimony, on the merits of the case, that she had positively stated that Cambron did not have intercourse with her near the Boyd Dairy, but that he did have intercourse with her at another time long after that, on the road leading to Noble down by an old dried-up haystack (as hereinbefore set forth). She testified that this occurred some time in the middle of May and that she was sure about that and that was the only thing that she was sure about. The prosecutrix could not detail any of the occasions on which the alleged acts of intercourse were supposed to have occurred with any degree of satisfaction.

There is not the slightest corroboration of the prosecutrix's testimony in the entire record save and except the testimony of Dr. Jim Haddock in relation to the examination which he conducted on May 14, 1947. He stated that it was his opinion that she had had sexual intercourse and that she was capable of having sexual

intercourse with a grown man and he was informed by the prosecutrix she had sexual intercourse a number of times with various boys and he stated that she had admitted to him that she had sexual intercourse with a man the night before he examined her on May 14th, which man she did not identify.

The defendant testifying in his own behalf denied he had ever had sexual intercourse with the prosecutrix or had ever been out with her. He testified that while he was employed by the taxicab company he was working in the back office all the time, driving only to and from work and taxiing from 5 to 7 during the interurban rush. He testified he couldn't ever recall knowing the prosecutrix though he had known her father and mother, having lived as a neighbor to them for six months when the prosecutrix was two or three years old. He said he moved away from Norman in 1939 or 1940. He testified he did pick the prosecutrix up at the interurban station with a carload of passengers and took her where she wanted to go, and then delivered the balance of the passengers.

We are of the opinion that the defendant's first objection in relation to the sufficiency of the evidence is well grounded. It is true from an early date this court has adopted the rule that one may be convicted upon the uncorroborated testimony of the prosecutrix. DeWitt v. State, 79 Okla. Cr. 136, 152 P. 2d 284, 289:

" 'From an early date this court has adopted the rule that one may be convicted upon the uncorroborated testimony of the prosecutrix. Morris v. State, 9 Okla. Cr. 241, 131 P. 731; Douglas v. State, 19 Okla. Cr. 257, 199 P. 927; Ferbrache v. State, 21 Okla. Cr. 256, 206 P. 617; Harris v. State, 27 Okla. Cr. 405, 228 P. 525; Day v. State, 29 Okla. Cr. 49, 232 P. 122.' "

But the foregoing rule has been limited with an exception which is as well established as the rule itself. As was said in DeWitt v. State, supra, the exception to the rule is:

"'* * * that the testimony of the prosecutrix in a rape case must be clear and convincing, and where it bears upon its face inherent evidence of improbability, is contradictory, inconsistent or unreasonable, it will be held as insufficient, and under these circumstances must be corroborated to the extent of making it sufficient. Alcorn v. State, 70 Okla. Cr. 386, 106 P. 2d 838; Williams v. State, 61 Okla. Cr. 396, 68 P. 2d 530; Kilpatrick v. State, 75 Okla. Cr. 28, 128 P. 2d 246; Gordon v. State, 75 Okla. Cr. 356, 131 P. 2d 503; Weeden v. State, 73 Okla. Cr. 258, 120 P. 2d 379; Burtt v. State, 64 Okla. Cr. 68, 77 P. 2d 580.

"'This rule has more often been applied in cases where the prosecutrix is a child of tender years and more susceptible of coming under the influence of others, or through fear, threats, coercion or duress. Self v. State, 62 Okla. Cr. 208, 70 P. 2d 1083; Woodruff v. State, 74 Okla. Cr. 289, 125 P. 2d 211.

"'In the Weston case, supra (Weston v. State, 77 Okla. Cr. 51, 138 P. 2d 553), reference is made to the Sowers case, supra (Sowers v. Territory, 6 Okla. 436, 50 P. 257), which is based upon the reasoning of Sir Matthew Hale, one of the greatest judges of criminal law of all times. The general rule, and the one recognized and followed by this court, is that where there is any evidence to support the verdict, or where the evidence is conflicting, the appellate court will not examine the record for the purpose of ascertaining or determining the weight of such evidence and the verdict approved by the trial judge will be permitted to stand. But in cases of this character, an exception is recognized to the general rule above stated, and that exception is that in rape cases the appellate court will make a careful examination of the whole record to the end that it may justify the sen-

tence imposed. This exception is based upon the firm foundation announced by Sir Mathew Hale when he said:

"It is true that rape is a most detestable crime, and therefore severely to be punished, with death; but it must be remembered that it is an accusation easily to be made, and hard to be proved, and harder to be defended by the party accused, though never so innocent."

" 'In the Weston case, the judgment and sentence was reversed. We there said * * *:

" ' "This is what we mean when we say that cases of this character should not be decided upon technicalities, based upon a fixed policy that the verdict of the jury is final and absolutely correct on every proposition of fact. The doctrine that one may be convicted on the uncorroborated testimony of the prosecutrix has an exception to the rule that is as well founded as the rule itself, and that is that where her testimony is contradictory, uncertain, improbable or she has been impeached, her testimony should then be corroborated. And this corroboration should be of such dignity as to give it weight with the jury upon the question that the actual crime has been committed. It should not be such slight circumstances as to leave the court and jury to guess or speculate that the crime has been committed and that the defendant is guilty. * * *" ' "

Here the testimony of the prosecutrix is contradictory, uncertain, improbable and impeached. Under these circumstances, for the conviction herein had to stand, her testimony must under the law be corroborated by evidence rising to such degree of dignity as to remove the guilt of the defendant from the realm of speculation, at least, as to the date of the act alleged and relied upon by the state to support the conviction. The proof is entirely insufficient, so highly improbable, contradictory and inconsistent as to be almost unbelievable as to any act of sexual intercourse occurring near Boyd's Dairy on May 1, 1947. The state relying upon this date and this

act to support the conviction herein, this conviction must of necessity be reversed for the lack of evidence to support the charge as laid in the information.

At the conclusion of the testimony, the defendant moved that the state be required to elect upon which act of intercourse they desired to base the prosecution. This motion was by the court overruled. The matter was permitted to go to the jury without such an election being made, with the resulting verdict as hereinbefore referred to.

The defendant urges this failure on the part of the court as ground for reversal. In this connection the trial court erred in not requiring the State to elect. Even had no motion been made to require the State to elect, the trial court on its own motion should require such an election or should treat the act on which the State first introduces evidence which tends in any degree to prove the offense charged as an election, and then should limit the jury to a consideration of such particular act as a basis for conviction, and should limit proof of other acts as corroboration or as showing relation of the parties. Cooper v. State, 31 Okla. Cr. 217, 238 P. 503, lays down this rule precisely as did Moorehead v. State, 38 Okla. Cr. 328, 261 P. 231; Smith v. State, 20 Okla. Cr. 124, 201 P. 663, wherein it was said:

"1. In prosecution for statutory rape, where there is evidence of more than one act of sexual intercourse between defendant and prosecutrix upon which a conviction could be based, the trial court should either require the prosecution to elect upon which of such acts it would rely for a conviction, or else have treated the act of which the state first introduced evidence to tend in any degree to prove the offense as an election and should have given a specific instruction limiting the jury

to a consideration of such particular act as a basis for a conviction.

"2. In this state a person may be tried for and convicted of only one offense at a time. Rape is not a continuous offense, and whilst in a prosecution for statutory rape proof of other acts of intercourse, occurring both prior to and subsequent to the one relied upon for a conviction, may be proved for the purpose of showing the intimate relations between the parties, etc., the conviction must be based solely upon one of such acts and not all of them, and it is error prejudicial to the defendant, where no election of acts is required, to instruct the jury in effect that a conviction should result from proof beyond reasonable doubt of any of such acts."

To the same effect is Kilpatrick v. State, 71 Okla. Cr. 129, 109 P. 2d 516, 517, wherein the court after stating the rule with reference to election further said:

"In a trial upon a charge of rape, proof of other acts of intercourse may be shown for the purpose of corroboration and as showing the relation between the parties; but a conviction must be based on one act. Where, as in this case, the defendant is not tried with reference to one particular act, but two separate and distinct acts, reversible error is committed when the prosecution is not required to elect one specific act and the trial court fails to treat the first act proven as an election."

An examination of this record discloses that this case was tried upon the alleged act of intercourse of May 1st as well as the subsequent act occurring on the Noble road, and the other acts not detailed in any respect. In the light of the foregoing authorities, the trial court in not requiring the state to elect upon one particular act, and not confining the court's instructions to the alleged act of May 1st by Boyd's Dairy, and in submitting the question of guilt on all acts in the shotgun fashion, clearly committed reversible error. If the trial court had sus-

tained the defendant's motion requiring the state to elect upon which act it desired to predicate the conviction, the jury might have convicted the defendant on the Noble road act of sexual intercourse. Under the record herein made it was certainly error not to do so. Moreover, the trial court having failed to treat the first act proven as an election, it is inescapable that we hold that reversible error was committed.

The next contention urged by the defendant is that the court committed reversible error in refusing to admit the prosecuting witness's signed and witnessed statement made on May 17, 1947, which is contradictory to and inconsistent with statements made prior thereto and contradictory to and inconsistent with testimony given at the preliminary hearing and in the trial on the merits. She stated as follows, to wit:

"State of Oklahoma ⎱ ss
"Cleveland County ⎰

"Statement of Lavena June Belden
"By C. Cockerell:

"Q. Now Lavena, have you been present during the time your father has been talking here in Mr. Cowan's office this morning all of the time? A. Yes.

"Q. Were you going to write out your statement yourself this morning? You go ahead and tell me in your own words that you were going to write. A. Harry Cambron, he wasn't guilty at all, and he never has bothered me or anything like that. I was going to write that Mr. Cambron was a pretty nice man; that he never has hurt me or anything like that. I went to his cab and there was a friend of mine in there I knew, and I told him I wanted to see her for a minute and she got back in his taxi and he taken her home and he came back and taken me home, and he came back to town by this self.

"Q. Why did you make the statement before that Mr. Cambron had bothered you. A. Well, I don't know why I said it.

*"I have read the above statement and it is the truth and I am signing it of my own accord. Nobody is making me do it and no one has promised me any reward for making this statement.*

"(Signed)    Lavena June Belden

"Witness:

"Angelita Belden
"Carolyn Cockerell"

This court has repeatedly held that the credibility of the prosecutrix may be impeached by proof that she made statements relative to the issues contrary to what she has testified to on the trial. In Alcorn v. State, 70 Okla. Cr. 386, 106 P. 2d 838, this court said:

"3. In prosecution for statutory rape, the credibility of the prosecutrix may be impeached by proof that she made statements relative to the issues contrary to what she has testified to on the trial."

In the body of the opinion, 78 Okla. Cr. at page 401, and 106 P. 2d, at page 844, respectively, this court laid down the rule with reference to impeaching the witness as follows, to wit:

"The methods of impeaching a witness are well defined. The three general classes of evidence by which a witness may be impeached are:

"'(1) Character evidence tending to show that the witness lacks truthfulness, (2) That on former occasions he has failed to state material facts, or different or conflicting facts testified to by him on the present occasion, (3) Evidence showing that his present testimony is materially variant from acts done, or statements made, at other times.'

" 'Another mode of discrediting a witness is by showing (either through cross-examination or by other witnesses) that the witness has at another time stated the opposite of what he now states or has otherwise varied from his present story. Here, "that which sets aside his credit and overthrows his evidence," in the words of Chief Baron Gilbert, is "the repugnancy of his evidence," "inasmuch as contraries cannot be true," and therefore he must be in error in at least one of the two statements; and if in error once, then perhaps also in other undetected instances. The probative value of this process—showing error and the capacity to err—is therefore much the same as in that of the preceding section, though the mode is somewhat different. The probative force thus arising merely from the inconsistency and the apparent falsity of one of the two statements, it follows, on the one hand, that the admission of the prior inconsistent statement does not violate the Hearsay rule, and, on the other hand, that it is not to be taken as affirmative evidence of the fact stated in it; for the reason, in both cases, that it is not offered as a testimonial assertion, but only as inconsistent with the present statement.' 1 Greenl. Ev., 16th Ed. Sec. 461."

To the same effect is Self v. State, 62 Okla. Cr. 208, 70 P. 2d 1083. The statement offered and rejected by the trial court being at variance, contradictory to and inconsistent with prior statements and the testimony given by the prosecuting witness in the foregoing statement, a portion of which has been quoted verbatim, was clearly admissible as tending to impeach the credibility of the prosecutrix. It should have been admitted. It was error for the court not to permit the same after proper predicate had been laid for admission of the same, which we believe was made in the case at bar.

The defendant urges, as his final ground for reversal, the proposition that the trial court should have instructed the jury that under the provisions of Title 21 O. S. A.

§ 1123, as an included offense on a charge of rape, jury may find one guilty who makes lewd or indecent proposals to a female child under 14 years of age, to have sexual relations or intercourse with him, or any other person, etc., and assess the penalty therein provided. He contends it was error for the court so not to do. The record discloses this contention was not urged at the time of trial, and that no request for such instruction was then made by the defendant for an instruction based on said statute. Under this state of the record, and in view of the necessity for reversal on the other grounds hereinbefore discussed, even though the contention has merit, we reserve our opinion on this proposition until the matter can first be presented to the trial court for its consideration.

For the reasons stated the judgment and sentence is reversed, and the cause remanded for further proceedings and new trial not inconsistent with this opinion.

The warden of the penitentitary at McAlester will deliver the defendant to the sheriff of Cleveland county, who will hold the defendant in custody until otherwise ordered according to law.                    .

BAREFOOT, P. J., and JONES, J., concur.