# BEASLEY v. STATE.

No. A-11402.  Sept. 26, 1951.

Rehearing Denied Jan. 9, 1952.

(236 P. 2d 263.)

Stevens & Grantham, Ponca City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

POWELL, J.   John A. Beasley was charged by information filed in the district court of Kay county with the crime of first degree rape, after previous conviction, but later the information was amended by the deletion of all reference to previous crimes.   The case was tried before a jury and the defendant was found guilty of the included crime of rape in the second degree, and his punishment fixed at ten years confinement in the state penitentiary.   Appeal has been perfected to this court, and the appellant will be referred to hereinafter as defendant, as in the trial court.

The information charged that the act was committed in Kay county on March 18, 1949, on Velma Jean Avery, a female person under the age of 18 years, and of previous chaste and virtuous character.   It was stated that "the act was accomplished by means of force overcoming her resistance and by means of threats of immediate injury and great bodily harm, accompanied by apparent power of execution by means of a certain pocket knife containing a blade approximately three and one-half inches in length, then and there held in the hands of the said John A. Beasley", etc.

For reversal counsel for defendant urge two assignments of error, the first being: "It was error of the court in not requiring the State of Oklahoma to elect as to which act of alleged rape it desired to stand in support of its information against this defendant, to which ruling of the court defendant duly excepted and exception was allowed."

The assignments will be considered in the order advanced.

If two separate acts of sexual intercourse were committed by the defendant upon the prosecuting witness, the contentions of counsel must be sustained, because each such act constitutes a distinct crime, and the trial court where two or more distinct acts are shown must either require the prosecution to elect upon which of such acts it will rely for conviction, or else the court must treat the act of which the State first introduced evidence tending in any degree to prove the offense as an election and should give a specific instruction limiting the jury to a consideration of this particular act as a basis for conviction.   Kilpatrick v. State, 71 Okla. Cr. 129, 109 P. 2d 516; Landon v. State, 83 Okla. Cr. 141, 174 P. 2d 266; Cambron v. State, 86 Okla. Cr. 437, 193 P. 2d 888.

It is the contention of the Attorney General that the within case is distinguishable from the facts in the above and a long list of other decisions by this court supporting the rule above set out, in that in such cases the various acts of intercourse were distinct and spaced over varying intervals of from a few minutes to a few hours to days and weeks.   If the act of intercourse commenced in the front seat was a continuing process from the front seat to the back seat and only ended in the back seat, then it could not be said that there were two acts of intercourse just because the original position was not maintained or just because there might have been a temporary interruption and many distinct penetrations in the process.   This is true in spite of the fact that even though the defendant had desisted and refrained from continuing the intercourse after the first penetration, however slight, still would have been guilty of rape by reason of Tit. 21 O. S. 1941 § 1113, which provides that: "Any sexual penetration, however slight, is sufficient to complete the crime."   Swearingen v. State, 31 Okla. Cr. 66, 237 P. 135.   In other words, it is not required that an orgasm take place.   State v. Pollock, 57 Ariz. 415, 114 P. 2d 249; Swearingen v. State, supra.   And the fact that there was an orgasm without penetration is not sufficient to constitute the consummated crime of rape.   Kitchen v. State, 61 Okla. Cr. 435, 69 P. 2d 411.

In the course of the act, especially where the female was an unwilling participant, the male organ might be inserted and removed any number of

times before the male experienced an emission or got his satisfaction. When this would happen he would be unable to make further penetration at least for from a few minutes to a few hours, depending upon the age and physical well being of the male. Each penetration where position of parties changed numerous times could not be treated as a separate act of rape where they formed a part and parcel of a continuous performance.

The prosecutrix testified concerning the act, that the defendant got a knife out of the car pocket, held it near her and pressed a spring and the blade flew open, and that he demanded that she take off her clothing. That she protested, but that he forced her to take off her jeans and underclothing. Witness was asked on direct examination:

"Q. Did he have sexual intercourse there in the front seat? A. I guess that is what you call it. Q. Did he put his male organ inside your female organ? A. Yes. Q. How far? A. Clear in. Q. And then what happened? A. He told me to get in the back seat because he couldn't do it in the front."

She further stated that she was crying and did not know what she was doing or how she got in the back seat, but got back there and that the same thing continued there as in the front seat; that he just forced his male organ in her and that when he finished that she was bleeding and that he told her to be careful not to get blood on the seat and that he took her underclothes and wiped the seat.

On cross-examination counsel made many attempts to show by the prosecutrix that there were two separate acts of intercourse between witness and the defendant. In this he was unsuccessful. There was no evidence of any appreciable interval between the acts of penetration in the front seat and the continuance in the back seat. Witness stated that the defendant after five or ten minutes in the front seat made her get in the back seat because "he said he couldn't do it in the front seat". Clearly indicating that he was not having a satisfactory experience there due no doubt to the lack of room and the difficulty of penetration, because Dr. Arrendiell, who examined witness soon. after the act, testified that although there were two distinct lacerations with oozing of blood, that he had some difficulty inserting his index finger in making the examination. Defendant therefore sought greater freedom in the rear seat and there continued the act until gratified. The record indicates that defendant was around 50 years of age and it would indeed have been a miracle if the defendant could have completed an act in the front seat of the car and then moved to the back seat and immediately commenced and completed a second act. That would be contrary to nature. The defendant did not testify. A study of the entire record compels the conclusion that but one act of sexual intercourse was had between defendant and prosecutrix and therefore but one crime was charged and the proof showed but one crime committed.

The second assignment of error sets out that:

"The court erred in permitting the State of Oklahoma to read to the jury, in its closing argument, defendant's affidavit for continuance, which had not been introduced in evidence, and which was used solely to bias and prejudice the jury, over objections of the defendant, to which ruling of the court defendant excepted and exception was allowed."

This is the most serious proposition advanced. The ruling discloses that although the defendant failed to testify, he did offer his stepfather, V. B. Ralston, an aged and retired man, to prove that during a portion of the time he was alleged to have been in the car with the prosecutrix on Friday, March 18, 1949, between the hours of 1:30 and 3:00 p. m., that he was at the home of witness,

accompanied by the wife and mother-in-law of accused, and that they had a load of groceries in the car and were on their way home from shopping in town. This was between 2:30 and 3:00 p. m.

Apparently this testimony was alluded to by counsel for defense when arguing to the jury, so that the county attorney during his closing argument to the jury stated:

Mr. Doggett:

"Now, there is one clincher that refutes this very convenient story that he was at the house in the residential section of town where his stepfather lives, and that his mother-in-law and his wife were with him at the time this crime occurred. It is very convenient, but, Gentlemen, there was a motion filed in this case on May 12 by this defendant. I am going to give you this, it was a part of the record that was filed in the case in the Court Clerk's office as a part of this case and it is a part of the record and part of the evidence in this case. Mr. Grantham: If the court please, we want to object to this, I don't believe that it has been offered in evidence. (Here counsel and court confer off record and the court examines said document.) The Court: Objection overruled. Exception. Mr. Doggett: Now, Gentlemen, this is a clincher on this business of whether or not he was some place else. The motion for continuance was filed on May 12th. (Here the county attorney reads said motion to the jury; a copy of said motion appears on pages 19 and 20 of this case-made.)"

It is not clear whether the county attorney read the affidavit executed by the defendant and attached to and made a part of the motion. But we must assume that at least the gist of the affidavit was recited as it sets out that one Vernon McCall was a material witness for the defendant and a continuance was sought and granted due to his absence. It was stated that if he were present he would testify that the defendant was in the presence of McCall in the business district of Ponca City at the time of the alleged offense of which defendant was charged. McCall did not testify at the trial. An alibi was sought to be established by the testimony of the stepfather, as heretofore set out. His testimony tended to account for only a portion of the time the defendant was supposed to have been with the prosecutrix. Of course the defendant could have been with the witness McCall in the business district the other portion of the time, or could have been with the prosecutrix. It will be noted that neither the wife nor the mother-in-law testified to corroborate the statement of the stepfather, V. B. Ralston, or to show just whether or not they saw V. B. Ralston in the business district of Ponca City while they were shopping for groceries, and that all three actually shopped for groceries. John Dysert, a witness for defendant, had established that on Saturday, March 19, the day following the crime charged, the defendant had assisted him in putting up a wire fence and had gone home at noon to take his family to shop for groceries and that he was gone about an hour and a half; that he worked until 3:30 p. m.

It appears from the record that the motion and affidavit in question were not offered and admitted in evidence. The county attorney contended that the instruments were a part of the files, a part of the record, and that he therefore had a right to call the same to the attention of the jury. The defense contended that the instruments were not a part of the record, but at all events the motion and affidavit were neither admissible in evidence and that the mentioning of the same was highly prejudicial to the substantial rights of the defendant, and constituted reversible error.

Clearly the motion and exhibit thereto could not be treated as a pleading and thus entitle the jury to a perusal of the same, or to entitle the county attorney to read the same for their benefit. Tit. 22 O. S. 1941 § 502 enumerates the

pleadings allowed, and a motion is not included. See also Tit. 22 O. S. 1941, § 515. It was, therefore, error for the court to permit the county attorney to read the instruments to the jury and comment on the same in the absence of being offered in evidence. But is such error sufficient under the facts in the within case to entitle the defendant to a new trial?

Counsel for defendant cite the case of Holcomb v. State, 16 Okla. Cr. 1, 166 P. 755, as supporting their contention that the action of the county attorney constituted reversible error. We have given close consideration to that case. It involved the murder of the therein defendant's husband. One Self had plead guilty to shooting him, and was sentenced to life imprisonment, but had claimed that he had been criminally intimate with the defendant and that she had advised him to kill her husband. In that case an information had been filed in the district court of Jefferson county. A change of venue was granted to Stephens county, and the county attorney of Jefferson county there filed a new information upon which the defendant was tried and convicted. This court held that the new information not having been filed in Jefferson county, the district court of Stephens county was without jurisdiction to try defendant thereon, and that the proceedings subsequent to the filing of the new or so-called amended information were null and void. Also it appears that the private prosecutor in closing argument to the jury commented at length on the fact that the defendant had obtained a change of venue, that he picked up the motion and affidavit for change of venue and read from the same, made satirical remarks concerning accused's good church activities in Jefferson county and proceeded to appeal to prejudices irrelevant to the case. We set out that the cases uniformly hold that the proceedings upon an application for change of venue in a criminal case are inadmissible in evidence against the accused, and cited State v. Phillips & Ross, 24 Mo. 475. In that case it was aptly said:

" * * * Whether there was a change of venue or not, or whether it was properly awarded or not, was a question with which the jury had nothing to do; and it is surprising that, against the objection of the accused, the attorney for the state should have done such a thing. What motive could there be to such an act but the hope of reproducing that very state of things from which the law in its mercy had rescued the defendant? It was making the law guilty of the absurdity of awarding a change of venue, and at the same time depriving the party of the advantage expected from it, a fair and impartial trial."

This court held that the motion for change of venue and affidavit attached were not admissible in evidence in any event, and that the conduct of the prosecuting attorney in the Holcomb case tended to deprive the defendant of a fair and impartial trial, and held such conduct reversible error.

In the within case the motion for continuance and the affidavit attached were admissible in evidence. The general rule governing the admissibility of such a motion is stated in Underhill's Criminal Evidence, 4th Ed., Sec. 426, that reads in part:

"The rules governing impeachment, by contradictory statements, as above set forth, are equally applicable whether the inconsistent declarations are oral or are contained in written instruments, such as affidavits, former pleadings, depositions, statements, letters, memoranda, publications by witness on the subject to which his testimony relates, voluntary stipulations between parties to a law-suit, sworn complaint charging crime or bill of exceptions. Thus the accused, when testifying, or any witness called in his behalf, may be contradicted by the evidence as stated by him in the affidavits which were made and used by the accused upon a motion for a continuance or postponement. * * *"

But here, although admissible, the motion and affidavit attached were not actually offered and admitted in evidence. And, as stated, for such reason

should not have been referred to by the county attorney in argument to the jury. A good reason why ordinarily this is so, is that if the motion had been offered in evidence then the accused might have put on evidence satisfactorily explaining the absence of the proposed witness and have explained any apparent discrepancy between the actual evidence of the witness produced, in this case being Ralston, and what it was asserted the absent witness would have testified. In the present case under the peculiar facts, we cannot see where the technical error complained of affected any substantial right of the defendant. Counsel for defendant at the time they produced V. B. Ralston as a witness were bound to have remembered and been aware of the allegations contained in their motion for continuance and the affidavit thereto attached, and they are bound to have known what witness Ralston would say with reference to the alibi they were seeking to establish as to time and place. As a matter of fact, the affidavit failed to show the exact time of day, commencing and ending, that defendant was supposed to have been with said proposed witness McCall. It well might have been that he was present with him only part of the time, though the affidavit stated: " * * * at the time of the alleged offense of which the defendant stands charged." Defendant had full opportunity to account for the full period without himself testifying by offering the evidence of his wife and mother-in-law who were supposed by inference from the load of groceries to have been shopping down town with defendant during a part of the time in question.

While the case of Hoxsey v. State, 143 Tex. Cr. R. 508, 159 S. W. 2d 886, and the cases cited therein and being Moon v. State, 155 Ark. 601, 245 S. W. 29, and State v. Baker, 23 Or. 441, 32 P. 161, not only treat the reading to a jury of the motion and affidavits for continuance as error, but treat the same as reversible error; and while in a close case where from a study of the record as a whole grave doubt should arise as to the guilt of an accused or where there were an accumulation of errors, or the comments of the county attorney with reference to such affidavit covered irrelevant matters and where unfair deductions were derived, clearly for the purpose of prejudicing the jury and not for the limited purpose of impeachment, under such circumstances, and other circumstances to be imagined, such would no doubt be held not only to be error, but reversible error. However, for the reasons above stated, and for the further reason that in this case the record so strongly indicates the guilt of the defendant of a crime for which he could have been assessed the death penalty, whereas, he was only assessed the lower penalty of ten years in the penitentiary, we cannot believe that the error complained of resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right. And while we approve the rule that all motions filed in a case form no part of the pleadings, and to entitle counsel to comment on the same or to submit the same to the jury for examination he must first offer the same in evidence; yet, whether the violation of this rule will constitute reversible error in a particular case will depend upon the facts peculiar to such case. See Tit. 22 O. S. 1941 § 1068, reading:

"No judgment shall be set aside or new trial granted by any appellate court of this State in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

The case is affirmed.