**David Town RAMOS, Plaintiff-In-Error,**

**v.**

**The STATE of Oklahoma, Defendant-in-Error.**

**No. A–14545.**

Court of Criminal Appeals of Oklahoma.

Oct. 2, 1968.

Valdhe F. Pitman, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

David Town Ramos, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County for the crime of Rape in the First Degree and from the judgment and sentence fixing his punishment at imprisonment in the State Penitentiary for a term of 99 years, he appeals.

Briefly stated, the evidence of the prosecutrix was that on the evening of December 25, 1966, between the hours of 8:30 and 9:00 p. m., the defendant, a Mexican male, knocked on the door of her apartment and posing as an investigator advised her that he was investigating an armed robbery and desired to examine her apartment. The door to the apartment was latched, but open enough that she could see the defendant who placed his hands in his pocket as if he had a gun and gained admission to the apartment where he held her captive for approximately twenty-six hours prior to leaving her bound and gagged after criminally assaulting her. She testified that several times during this period of time she was raped by the defendant.

The defendant admitted to the arresting officer that he had sexual relations with her, but asserted it was with her consent. The investigating officer who took her statement the next day after this incident, testified on cross-examination that the prosecutrix told him that although several attempts had been made to ravish her, the defendant only accomplished one successful act of sexual intercourse. No evidence was offered on behalf of the defendant but the direction of the cross-examination of defense counsel substantially raised the issue of consent.

The defendant's first assignment of error is that "the demeanor of the prosecuting attorney was substantially prejudicial to the defendant's cause and materially affected his defense and right to a fair and impartial trial." In this regard the defendant cites several insances in the prosecuting

attorney's closing argument which he contends damaged his case and did not allow him a fair and impartial trial. In his brief, the defendant cites the following from the casemade at page 579:

"And I'll say this to you, if you saw an animal that was rabid and mad you could kill it, and you would, wouldn't you, you would get rid of it, wouldn't you?"

In Williams v. State, 93 Okl.Cr. 260, 226 P.2d 989, the prosecutor made the following statements to the jury in his closing argument:

"Defendant was under the record the vilest type of character known to humanity." [He has] "a warped brain, a degenerate mind." [He] "should be killed just as a person would kill a rattlesnake."

In Williams v. State, supra, this Court said:

"Courts are very liberal in allowing attorneys to present their views in their arguments to the jury and it is only when they purposely go outside of the record for the purpose of exciting the passion and prejudice of the jury so as to cause them to act in a biased manner will the courts interfere so as to set aside the verdict. As hereinabove stated the language used by the prosecutor was very forceful, but we cannot say that it was wholly unsupported by the record. In fact we think the record completely supports the references made to the accused. His guilt is completely shown. We agree with the prosecutor that an adult who would commit the acts done by the defendant shows that he is, 'low-down, degenerate, and filthy.' He richly deserves the punishment which he received."

We are of the opinion that the record clearly defines the guilt of the defendant and that none of the statements made by the prosecutor in his closing argument as set out in defendant's brief denied him of his right to a fair and impartial trial.

Finding this assignment of error without merit, we will consider defendant's second assignment of error that "the trial court erred in its admission into evidence certain demonstrative evidence offered by the state and objected to by defense counsel." The evidence referred to was Exhibit No. 4 which was a towel which the defendant had used to clean himself after having sexually assaulted the prosecutrix and then used the towel to gag her. In his brief the defendant states:

"The defendant states that the introduction of this evidence so impassioned the minds of the jurors that under any circumstances the defendant could not have received a fair trial. The psychological effect of a prosecutor holding a semen-crusted towel, waving it before the eyes of a recoiling jury while backdropped by a diminuative, inarticulate Mexican accused of raping a previously virginal girl on Christmas Day in her own apartment is insurmountable by any means of defense. It is calculated unfairness, prejudicial, and repugnant. * * *"

We observe that in his closing argument, appearing at page 543 of the casemade, counsel for defense had this to say:

"Apparently here is the Exhibit, that you have not had an opportunity to see. There is little, if anything, that you can see. You might be able to see a little bit more of it than I can. There appears to be some kind of stains on three different spots right here. There are two right here. They don't correspond with this one.

Apparently you can see that all right. I don't know whether you can or not. I will try to lift it up a little higher where you can see it. It's here on the front side. Right in here it is.

Then, from the testimony this defendant here cleaned himself with this towel, if it was this towel. Now, let's look rather closely, let's see if we can see any type of stain whatsoever that would in any

[way] indicate that there were traces of blood there on it.

I can see none, maybe some of you can see better than I can looking at it. I can't find any stains at all. * * *"

It thusly appears that the only towel waving before the jury was done by counsel for the defense and not by the prosecutor; however, we are of the opinion that since the defense interposed was one of consent, it was competent for the State to show that the towel was used to gag the prosecutrix after having been tied and bound by the defendant a circumstance which, if believed by the jury, would be inconsistent with defendant's claim of consent. Moreover, the binding and gagging of the prosecutrix was so closely related to the offense charged as to be a part of the res gestae.

It is next contended that the sentence imposed was so excessive as to shock the conscience of the court. We have repeatedly held that:

"The statutory power granted to the Court of Criminal Appeals to modify a sentence of one convicted of crime and who has appealed will not be exercised unless court can conscientiously say from all the facts and circumstances that the sentence is so excessive as to indicate that the jury acted from partiality or prejudice." Kelly v. State, Okl.Cr.App., 415 P.2d 187.

See also Cody v. State, Okl.Cr.App., 376 P.2d 625.

It is lastly contended that the trial court erred in refusing to allow counsel for defense to summons the jurors to testify in support of his Motion for a New Trial relative to whether or not there had been any unauthorized communication between them and the bailiff. We believe that the State has sufficiently answered this proposition in its brief wherein it is stated:

"After the jury retired to deliberate the case for some fifteen to twenty minutes, the buzzer rang and the Court sent the Bailiff up to see what the jury wanted.

The Bailiff came back to the court room and replied that the jury had a question. The jury was kept in the jury room until counsel for defendant, Valdhe Pitman, arrived. At this time the Court instructed the Bailiff to go back to the jury room and have one of the jurors to write the question down (CM 581–582). This was done by agreement of both counsel (CM 582).

The question asked was: 'How many years will the defendant have to serve before he will be eligible for parole on a sentence of ninety-nine years.' The Court's reply was:

'That any written instructions which you now have, you have all the law in and the information which I am permitted to give you.' It was signed by Bob Aubrey, Judge. (CM 583).

On page 583 of the casemade, the Bailiff advised the court what the question was before the Court instructed him to get the question in writing. At this time there was a big discussion between the Court and counsel in attempting to determine how the Bailiff knew the question before it was written down and sent to the Court.

The record is silent and the state has absolutely no method of finding out how the bailiff found out what the question was. On page 583, Mr. Cooper placed in the record that a verdict had been reached and the question affected the punishment.

There is nothing in the record that says the bailiff talked with the jury, but the indication is that the jury, or a member of the jury merely told the bailiff that a decision had been reached but that a question needed to be answered.

22 O.S.1961, § 857, says:

'After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them

together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, *or to ask them whether they have agreed upon a verdict,* and to return them into court when they have so agreed, or when ordered by the court.' (Emphasis added)

This section is very familiar to this court since it sets out the procedure to be employed after a jury retires for deliberation. The italicized portion of 22 O.S. 1961, § 857, allows the person or persons in charge of the jury to ask them if they have agreed upon a verdict. The record does not refer to any conversation between the jury and Bailiff, but to reiterate what was said when the record was made, we might refer back to page 583 of the casemade where Mr. Cooper said that a verdict had been reached and the question affected the punishment. The state contends that the bailiff did not breach his oath when he relayed to the Court that a verdict was reached but that the jury had a question about the verdict.

In the case of Foreman v. State, Okl.Cr. [App.] 370 P.2d 34, the court referred to Lowrey v. State, 87 Okl.Cr. 313, 197 P.2d 637, 656, and said:

'Moreover, we feel constrained to say that the bailiff of the court must at all times protect the jury not only from his own intrusion but also from that of outsiders. It is not necessary at any time that the bailiff pass beyond his post outside the jury room door. All papers and exhibits should be handed therefrom to him. He is at no time justified in communicating with the jury in any manner about the case except to act as a messenger between them and the court, and to inquire of them from outside the jury room, *if they have arrived at a verdict.'*

The state cites Foreman v. State, supra, to show that the bailiff is only doing his job as set out in the above statutes when he is informed by the jury that they have reached a verdict.

On page 605 of the casemade the Court instructed each of the attorneys to file with him a memorandum brief stating law that would determine the method that would be used in attempting to see if unauthorized communication came about between the jury and the bailiff.

On June 12, 1967, another proceeding came about to discuss the points of law, and in this proceeding the Court said:

'* * * it is the Court's opinion that something more than mere imagination or the supposition that something might have happened is necessary before this [recall the jurors] can be done, Mr. Pitman, otherwise every lawsuit tried would have to go through this same process.'

It is fundamental to this Court that the burden is on the defendant to show that there was unauthorized communication, and then the burden shifts to the State to show what the communication was, and that the same was not prejudicial to the defendant.

The state contends because of the foregoing testimony in the record that there was no question what the communication was, the Court is the party that put it in the record (CM 583). We feel that this case is different than other cases where the Court did not know what the communication was."

We are of the opinion, and therefore hold, that before the trial court is justified in authorizing the issuance of summons for all jurors to appear and testify relative to the issue of whether unauthorized communications have been made to them, it is necessary that the party making the request for the issuance of said summons make specific allegations alleging that some unauthorized communication was made and offer evidence tending to support this allegation. When this is not done, the trial court has no duty to require the issu-

ance of summons for said jurors in order that a fishing expedition may be conducted which might, or might not, disclose some irregularity.

We are of the opinion that the defendant had a fair and impartial trial, that the issues were properly submitted and the instructions fairly and correctly state the law applicable to the case, that the evidence supports the verdict, and that all constitutional and statutory rights of the defendant were protected. For these reasons, the judgment and sentence appealed from is affirmed.

NIX, P. J., concurs.

BRETT, Judge (specially concurs):

I concur in Judge BUSSEY'S opinion and add that in my view the bailiff did not violate the provision of 22 O.S.1961 § 857, and find that this case can be readily distinguished from Scott v. State, No A–14401, handed down on September 4, 1968. In this case there was no uncertainty concerning what transpired between the jury and the bailiff. Likewise, the punishment imposed in this case is less than the maximum provided in the statutes for this offense.