**Harold BOSHEARS, Plaintiff in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

July 23, 1973.

Certiorari Denied by Supreme Court
Sept. 17, 1973.

Frank Dossett, LaFollette, for plaintiff in error.

David M. Pack, Atty. Gen., John B. Hagler, Jr., Asst. Atty. Gen., Nashville, Arzo Carson, Dist. Atty. Gen., Huntsville, Con E. Troutman, Asst. Dist. Atty. Gen., LaFollette, for defendant in error.

## OPINION

DWYER, Judge.

Harold Boshears, later referred to herein as the defendant, was convicted by a jury for committing the offense of voluntary manslaughter, with punishment at confinement for not more than ten years in the State Penitentiary.

From the judgment imposed on the verdict he has seasonably perfected this appeal by retained counsel.

The facts as found from our review reflect that the defendant and the decedent, husband and wife, respectively, resided in the rural community of Jacksboro located in Campbell County.

Around the hour of 8:00 a.m. on March 26, 1971, a daughter of the defendant and decedent, with her husband and son stopped to visit her parents. A light snow had fallen the night before and had covered the grounds surrounding the home. When the daughter knocked and no one answered she tried the door and when it opened she saw her father, the defendant, who was coming from the bathroom. He was clean-shaven and wearing clean clothes. He stated that someone had broken in, robbed them and then killed the mother. The daughter and her husband heard groans coming from the basement and upon investigation the mother was found lying at the bottom of the basement stairs, in a pool of blood. The defendant-father had not called for help by the time of the daughter's arrival. A request for help was made and answered, with the decedent being taken to the LaFollette Hospital and then transferred to the Baptist Hospital in Knoxville, where she died without regaining consciousness.

A pathologist testified that the cause of death was due to hemorrhage into her brain from blows about the head, causing swelling of the brain resulting in respiratory failure. His testimony further reflected that there were multiple fractures of the skull produced by blows of considerable force being applied to the skull.

When the defendant returned home from the LaFollette Hospital he commented to the officers that the fire should be stirred in the furnace, which he did. An officer, suspicious of this, doused the fire and removed from the furnace pieces of cloth and some bits of metal.

The sheriff, in investigating the home, found no proof of any break-in and no tracks in the snow around the house.

The defendant was seen putting something brown in a clothes hamper in the bathroom by his grandson who recovered wet brown gloves. An examination of the gloves revealed human bloodstains on them.

The proof also showed the bathtub to be wet and a towel across it was wet and contained blood.

The proof further reflects that some weeks before the event the defendant had stated he was either going to beat his wife to death or leave, and he did not intend to leave.

The facts further reflect the decedent-wife had been ill from arthritis and had her own separate bedroom. It was also established that the defendant had been associating with other women.

For some unexplained reason defendant's bedroom had a bolt-type latch on the outside of the door which, when activated, would lock him in his bedroom. This latch containing the bolt part had been torn from the door but the catch for the bolt on the door jam was undisturbed.

There was a considerable amount of blood on the pillow and sheets of the decedent's bed, on the floor and through a hallway, with a large quantity on the steps leading into the basement and a large quantity found at the bottom of the steps.

The defendant denied killing his wife and related that when he woke that morning he heard a noise (a school bus) and found his door locked. He forced the lock on the door and found his wife at the foot of the basement stairs. He further explains blood on his gloves by relating that the day before a helicopter had crashed and he helped remove the pilot. He denies shaving and cleaning up the morning his daughter and her husband and child arrived and found his wife. He admits marital problems with his wife and affirmed there had been arguments about his social behavior with other women.

■ The jury, by its verdict, has, in their province, established the credibility of the witnesses and, after seeing and hearing the witnesses with their diametrically opposed versions of the event, has settled the conflicts and discrepancies. See Holt v. State, 210 Tenn. 188, 197, 357 S.W.2d 57. It is not our province to reverse their finding on the facts unless the evidence preponderates against the verdict. See Brum-ley v. State, Tenn.Cr.App., 475 S.W.2d 180, 181. Nor is it our prerogative to reevaluate the evidence. See State v. Grace, Tenn., 493 S.W.2d 474, 476.

We will now evaluate and treat the several assignments of error filed by the defendant through which he urges reversal of this conviction.

■ He contends in two assignments that the evidence in this circumstantial evidence case is, as a matter of law, insufficient. He bolsters his contention by reliance on State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610, which appears to conflict with the rule enunciated in the following cases governing appellate review in circumstantial evidence cases, as here. See Ford v. State, 184 Tenn. 443, 451, 201 S.W.2d 539; Chadwick v. State, 189 Tenn. 256, 259, 225 S.W.2d 52; Farmer v. State, 208 Tenn. 75, 79, 343 S.W.2d 895; Jamison v. State, 209 Tenn. 426, 432, 354 S.W.2d 252; Gossett v. State, 224 Tenn. 374, 455 S.W.2d 585, 588; and, Royston v. State, 1 Tenn.Cr.App. 748, 450 S.W.2d 39, 41. However, under either rule we are satisfied as to the evidence being sufficient to support the verdict, under the facts we have outlined in our narration of the evidence. We are satisfied that these facts are consistent with his guilt and inconsistent with his innocence. We further feel that the evidence rejects his theory that the decedent fell down the steps after drinking and suffering a nose bleed. The medical proof reflected the first joint of the fourth finger on the left hand was amputated, which fact would be inconsistent with a fall. Further, the doctor related that in order for decedent to have suffered the wounds he found on the body she would have had to consistently strike each step. We further note: (1) the proof reflects indentions in the defendant's bedroom door in relation to where the bolt part of the latch was anchored and no damage to the catching part in the door jam; (2) there was no call for help by the defendant; (3) there was no visible forcible entry into the home; (4) there were no

tracks in the snow around the house; (5) the defendant's statement about killing his wife before he would leave; (6) he and decedent were the only two persons in the home; (7) he was clean shaven with clean clothes on, the bathtub was wet and the towel was across the bathtub, indicating he had shaved and bathed; (8) his apparent not calling for help with his wife groaning at the bottom of the stairs; (9) his behavior on the way to the hospital with members of the family, at various times being silent and sleeping, and on the way home after she expired he was joking and talking. There are some of the facts which we have found point the finger of guilt unerringly to the defendant, to the exclusion of all others. The assignments pertaining thereto are overruled.

■■ He next contends it was error for the trial court to allow testimony about the metal parts and pieces of cloth taken from the furnace when they physically could not be produced by the state, having been lost. We find no merit here. The best evidence rule applies to documentary evidence and not physical evidence. See Williams v. State, 179 Tenn. 247, 249, 165 S.W.2d 377. The assignment is overruled.

■ He next contends that he was denied a preliminary hearing, see T.C.A. § 40–1131, and therefore the trial court erred in overruling his plea in abatement to abate the indictment. The defendant was before the sessions court on a warrant of arrest on March 29, 1971. He was allowed bail and a hearing was set for April 26. On motion of counsel he was sent by the court to Eastern and Central State hospitals for mental evaluation with return from the evaluation on July 8, 1971. The grand jury returned a true bill on June 22, 1971. There is testimony by counsel that an informal request was made to the attorney general for a preliminary hearing prior to the presentment of the indictment. The only function that the preliminary hearing serves is for a determination of whether there is or is not probable cause to believe the defendant committed the crime and then fix bail with the binding over for the action of the grand jury. See State v. Hudson, Tenn.Cr.App., 487 S.W.2d 672, 674. However, when, as here, he was institutionalized we do not think it was error for the attorney general to have proceeded as he did. Nor do we think the trial court erred in overruling the plea in abatement. The assignment is overruled.

■ He next contends the trial court erred in denying his motion to suppress evidence uncovered as a result of an unlawful search. He reasons that when the sheriff did not arrest the defendant when he arrived at the home that any search not contemporaneous with the arrest was unreasonable. The defendant was not officially arrested until 5:00 p.m. However, the defendant went to the LaFollette Hospital, with the sheriff going also, we feel, to try and interview the brutally beaten wife. He and the defendant returned to the home where he and his deputies commenced their investigation of the interior, photographing and dusting for fingerprints, in order to preserve the crime scene and gather evidence. The defendant commented about the fire and started stirring it. This aroused the suspicion of the deputy, with his dousing the fire and recovering metal objects and pieces of cloth. This prompt action prevented their destruction and we find nothing unreasonable about this seizure. The defendant was allowed by the sheriff to go to the hospital in Knoxville after cautioning him that he wanted to see him later on.

■■ The sheriff on his initial arrival at the house observed the sock, the towel and the lock. As such, this was no search, the articles being in plain view. See Lloyd v. State, 223 Tenn. 1, 440 S.W.2d 797, 801. On his return with the defendant he had the right to seize these articles as evidence. See Brown v. State, Tenn.Cr.App., 477 S. W.2d 525, 532. We hold that the sheriff, even though having probable cause to arrest the defendant upon his arrival, at his

original entry into the house, and not doing so, does not, under the outlined circumstances, make the seizure of the articles unreasonable. The assignment is overruled.

The judgment of the trial court is affirmed.

WALKER, P. J., and OLIVER, J., concur.