John LILLARD, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

April 30, 1975.

Certiorari Denied by Supreme Court
Sept. 8, 1975.

Raymond P. Gibbs, Murfreesboro, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, Guy R. Dotson, Dist. Atty. Gen., Murfreesboro, for defendant-in-error.

## OPINION

RUSSELL, Judge.

John Lillard, represented by retained counsel, appeals in error his convictions for two separate rapes committed upon the same victim upon the same night, resulting in two consecutive twenty (20) year penitentiary sentences.

Error is assigned questioning the sufficiency of the evidence to support the jury's verdict. In summarizing the evidence, it is noteworthy that as to the facts of the matter all that we have before us is the composite picture drawn by State's witnesses, as the defendant did not testify or offer any contrary proof. Counsel's argument seems mainly to attack what is said to be the harshness of consecutive twenty (20) year sentences.

The State's proof is that two women, Mary Myers and Bernita Jenkins, were walking on Charlotte Avenue near their homes in Nashville after midnight when the accused, alone in an automobile, stopped and asked directions to a street in another part of town. He represented himself as being a deputy sheriff who had delivered a prisoner to the penitentiary and then gotten lost. The women were unable to give him directions, but when they indicated that they knew the way he offered to return them if they would accompany him and show him the way. They got in the car, and he simply drove on to a rural area in Rutherford County. He told the women that he intended to have them sexually. They asked to be let out of the car and once he let them out, but immediately came back and got them, saying that he'd kill them if they didn't get back in the car. He claimed that he had a pistol, that he was out on bond for having killed a university professor and that killing them wouldn't matter; and when he demanded of the first victim that she remove her pants, he told her that if she didn't comply that he'd use a knife "and she wouldn't have no trouble getting out of them at all". He forced Bernita Jenkins onto the back seat and had intercourse with her. Mary Myers was upon the front seat feigning an asthma attack; and she got out of the car, on the pretext of getting more air, and looked for a rock. She found one and handed it to Bernita Jenkins, but apparently it was small and wasn't used.

Lillard drove to another location and ordered Mary Myers onto the back seat and to disrobe. He was having intercourse with her when Bernita Jenkins dropped a larger rock onto his head, lacerating it. He terminated that rape, caught Bernita Jenkins and with multiple blows knocked her down twice, threatened to kill her by driving the

car over her, and finally left her lying in the road or ditch as he drove away with Mary Myers. After driving a while Lillard parked at another location, advised Mary Myers that he was going to finish what he had started, and again had sexual intercourse with her. He then drove back to Nashville, where he let Mary Myers out of the car across town from her home.

Bernita Jenkins sounded the alarm by going first to a nearby residence, from whence she was carried to a telephone and then to a meeting with officers. Mary Myers went to her home in Nashville, procured a gun and three male friends, and returned to Rutherford County to try to find Bernita Jenkins and Lillard, whom she intended to execute. Upon being unable to find Bernita Jenkins, Mary Myers also contacted law enforcement officers. The information given by the victims, including the license number of the car, led to the arrest of Lillard, who was positively identified by both women as their assailant.

■ Only two areas of the evidence represent significant sufficiency questions. The first has to do with resistance to the rapes. Certainly the intercourse was against the wills of the women, but the requirement of force is only met by looking to the whole situation. Lillard never displayed a gun or knife, and apparently did not strike either woman until he was struck upon the head during the second rape. Mary Myers admitted that she did not fight him before either submission. The jury found that, in the total context of this transaction, that justifiable fear of force and violence was present, rendering the rapes "forcible". The women, at the time of the rapes, were captives under the control of Lillard. His violent response to the one attempt at resistance supports their judgment that it would have been very dangerous, and Mary Myers' not fighting him cannot reasonably be construed as consent, or as negating the coerced and forcible nature of the acts.

The second question has to do with whether two separate rapes of Mary Myers are supported by the proof. The record is not clear as to exactly how much time elapsed between the intercourse interrupted by the blow to Lillard's head and the second act of intercourse with Mary Myers. It is clear that he drove away from the first scene, "around the road and in a field". How far Lillard drove is not clear. She testified that "[h]e drove the car around some more and then he finally came to this field and there was a gateway there and he drove the car in the gateway and up a little rise". The second intercourse then occurred.

There apparently is little case law on the subject of whether multiple instances of forcible intercourse compose one crime of rape or several. Plaintiff-in-error does not contend that only one rape of Mary Myers occurred, but argues that the punishments should have been set to run concurrently. Certainly what happened on each of these occasions was found to be rape, and either would have been if the other incident had not occurred. It was in fact two separate rapes, and we believe that it also was as a matter of law. In *1 Wharton's Criminal Law and Procedure*, p. 635, § 304, Rape and Related Offenses, we find the statement:

"Each act of intercourse is a separate offense."

Cited as authority for that proposition is the case of *Mikell v. State*, 242 Ala. 298, 5 So.2d 825 (1941). *Mikell* only implicitly so holds, by dealing with a second prosecution without saying more than that an acquittal by a jury of the first offense barred prosecution for the subsequent offense in another county, where the female testified that she submitted upon the second occasion because of fear and mental apprehension aroused in her mind upon the first occasion. It could be taken that the Alabama court would have permitted the second prosecution if it had been the fruit of new or additional force or coercion. The two alleged rapes were upon the same evening, but in different counties.

Explicit contrary authority may be found in two 1969 cases from Oklahoma involving the same defendant in each case. He forced his victims in each instance into a laundromat rest room, committed one forcible rape with the victim standing, then required each to commit oral sex acts, and then committed the second act of intercourse upon the floor. *Turnbow v. State*, Okl.Cr., 451 P.2d 387 (1969); *Turnbow v. State*, Okl.Cr., 454 P.2d 674 (1969). The Court of Criminal Appeals of Oklahoma held, in that context, that only a single offense of rape was committed. In each case by footnote the court said:

"1. Although not raised as an issue in *Ramos v. State*, Okl.Cr., 445 P.2d 807, this Court treated several acts of intercourse between the prosecutrix and the defendant, Romas, occurring over a 26 hour period of time, as constituting but a single act of rape."

We cannot agree with the *Ramos* approach. While requisite penetration may occur many times during a single episode of intercourse, there exists in that context the single basic intent to have sexual intercourse and the same force and/or coercion is common to the penetrations, even if they be momentarily interrupted.

But we do not agree that a man who has raped a woman once may again assault and ravish her with impunity, at another time and at another place, as was done here. An intent was formed to rape her again. The evidence of the second rape is entirely additional to that of the first. Additional orders were given to the captive female, an intent to have her again was formed and manifested, and the crime committed. Certainly there was separate and additional fear, humiliation and danger to the victim.

We hold that separate acts of rape, committed at different times and places and the product of several intents, are severally punishable.

T.C.A. § 40–2711 gives to the trial judge the function of exercising a sound discretion in deciding whether multiple sentences shall be concurrent or cumulative (consecutive). This discretion is reviewable on appeal by the terms of the same statute. We cannot say that the trial judge abused his discretion in this case. The defendant was totally unresponsive to the pleas of his one-time victim, and victimized her again. We have said that this was a new crime, and we will not now say that the trial judge erred in affixing a meaningful punishment.

Numerous other errors are assigned. It was not error to allow the State to introduce a witness subpoenaed by the defendant. Nor was it error to allow testimony about the rape of Bernita Jenkins, as that proof was inseparably intertwined into the whole episode and was germane to the issue of defendant's intent, the threats and coercion resulting in the intimidation and submission of Mary Myers, etc. Nor was a bail bond set at $50,000 per case excessive or unconstitutional.

We cannot consider the assignment of error grounded upon alleged improper jury argument by the prosecuting attorney, because retained counsel submitted a proposed bill of exceptions over his signature that did not contain the argument. Nor does counsel say that the argument was objected to contemporaneously. A motion suggesting a diminution of the record to bring up this argument is meritless, because such a motion reaches only items that are a part of the record. Jury argument does not become a part of the record until and unless it is incorporated into the bill of exceptions. We have had no motion to permit a late filing of this argument as an addition to the bill of exceptions, as might be done in a proper case under T.C.A. § 27–111.

Unmeritorious is the contention that the convictions cannot stand because the victim was never examined by a doctor. Nor was it improper to allow testimony about the finding of panties and a scarf at

one of the crime scenes, or improper to disallow questioning of Mary Myers about her charging Bernita Jenkins with burglary or the charging by Bernita Jenkins of Mary Myers' boyfriend with stealing $201.00 from her apartment.

The recall of Mary Myers to testify a second time was clearly within the discretion of the trial judge. Nor was error committed when Mary Myers testified, without objection, that Lillard had said that he was out on bond for killing a white man. An assignment that the defendant was brought into Court handcuffed has no support in the record.

It is said that the Court erred in not declaring a mistrial "when the defendant was able to secure only one Negro on the jury", and "that Negroes did not compose a proportionate number on the jury panel in relation to their numbers in the population of Rutherford County". This question was not raised until the motion for a new trial was filed. The jury was selected and accepted without any such question. Obviously, an attack upon the composition of the venire, made for the first time after a trial which might have resulted in an acquittal, came too late. *State v. Cole*, 28 Tenn. 626; *McTigue v. State*, 63 Tenn. 313; *Turner v. State*, 89 Tenn. 547, 15 S.W. 838; *Ellis v. State*, 92 Tenn. 85, 20 S.W. 500; *State ex rel. Lawrence v. Henderson*, 1 Tenn.Cr.App. 199, 433 S.W.2d 96; *Burt v. State*, 2 Tenn.Cr.App. 408, 454 S.W.2d 182.

Furthermore, a showing of a systematic exclusion of blacks would have been necessary to demonstrate a constitutional infirmity. No such showing is in this record; and, in fact, it appears from statements of counsel that blacks were included in the venire, and one actually served upon the trial jury.

We hold that the punishment fixed was not excessive, being well within the limits prescribed by law. No error was committed in letting the investigating officers testify as to what they were told by the recent rape victims and what they did as a result thereof. *Klaver v. State*, Tenn. Cr.App., 503 S.W.2d 946 (1973). No error was committed in permitting the victim to testify that she went home and got a gun. The fact that the gun was not introduced is not a violation of the "best evidence rule", as alleged. That rule has no application to non-documentary evidence. *Boshears v. State*, Tenn.Cr.App., 500 S.W.2d 621 (1973). Other assignments of error also erroneously grounded upon the same rule are meritless.

We have carefully reviewed all of the assignments of error, many of which were not briefed, and find them to be without merit. Lillard makes no serious argument except to say, through counsel, that he has been harshly dealt with. Such a judgment is obviously influenced by one's point of view. The victim apparently felt that he deserved death. The jury's verdict represented society's view of appropriate punishment.

Affirmed.

ANDREW T. TAYLOR, Special Judge, concurs.

GALBREATH, Judge (dissenting).

I am unable to agree that under the facts of this case and the law of this State and the majority of other jurisdictions that the plaintiff in error may be punished twice for the forcible acts of intercourse resulting in his conviction. I must therefore respectfully dissent.

The general law in this State, it seems to me, was expressed by our Supreme Court after discussing the views pro and con on multiple convictions involving separate crimes committed in a single episode of criminality:

"While, in view of these authorities, we feel constrained to hold that in a case like this the jury may find the prisoner guilty

upon each count, and ascertain the punishment separately, we are of opinion that the usual and better practice in such cases is to find a general verdict for the two cognate offenses charged."

Even if it be conceded that two convictions and two punishments may be had in any case upon separate counts, the practice is not approved, and, certainly it must be clear that the offenses are wholly separate and distinct. Our own cases appear to prohibit the practice where the offenses grow out of one transaction and involve but one criminal intent. *Patmore v. State*, 152 Tenn. 281, 277 S.W. 892.

Albeit the majority does not agree, I am of the opinion there was but a single intent involved insofar as the victim in this case was concerned—that was to rape her. The majority cites *Turnbow v. State*, in which the Oklahoma Court of Appeals held directly that "several acts of intercourse between the prosecutrix and the defendant . . . occurring over a twenty-six hour period of time" constituted but a single act of rape. Since there has never been a case involving the facts and the point of law in Tennessee, we must look to other jurisdictions for guidance.

In *Peterson v. State*, 116 Neb. 268, 216 N.W. 823, the Nebraska Supreme Court gave the following description of fact and conclusion of law which would fit this case:

[T]he defendant . . . secured the physical control and possession of the prosecutrix which thereafter was continuously maintained and exercised by him for a period of not to exceed two hours; that during this time, for the purpose mentioned, the prosecutrix was kept and carried about Morrill county, Nebraska, in an automobile, and finally taken to the home of the defendant; that, en route, the prosecutrix was twice compelled to submit to sexual intercourse with the defendant . . . .; that, upon arrival at defendant's home, prosecutrix was forcibly removed from the automobile, taken

into the house, where the sexual act was repeated by the accused . . .

The jury, as triers of fact, who heard this evidence and saw the witnesses, were the sole judges of its truth. In connection with surrounding facts and circumstances appearing in the record, if believed, it established one indivisible, criminal transaction, initiated and carried out by the accused in person, all of which took place within a short period of time on a single night; and during which everything said and done was in furtherance of one continuous, criminal purpose not completed and entirely consummated on part of the accused until after his last sexual relations with prosecutrix at his home.

I concede that separate and distinct acts of rape may and can be susceptible to separate prosecutions and punishments. My point is that although the rape in this case took place over a period of an hour or so and involved different locations, it was one continuing transaction. A somewhat similar situation is described in another Oklahoma case. That case also involved a defendant of some fifty years of age as was the defendant here. The forcible act of intercourse in that case was also interrupted as in this case and later resumed and completed. But I will let the Oklahoma Court tell the story:

In the course of the act, especially where the female was an unwilling participant, the male organ might be inserted and removed any number of times before the male experienced an emission or got his satisfaction. When this would happen he would be unable to make further penetration at least for from a few minutes to a few hours, depending upon the age and physical well being of the male. Each penetration where position of parties changed numerous times could not be treated as a separate act of rape where they formed a part and parcel of a continuous performance.

The prosecutrix testified concerning the act, that the defendant got a knife

out of the car pocket, held it near her and pressed a spring and the blade flew open, and that he demanded that she take off her clothing. That she protested, but that he forced her to take off her jeans and underclothing. Witness was asked on direct examination:

"Q. Did he have sexual intercourse there in the front seat? A. I guess that is what you call it.

"Q. Did he put his male organ inside your female organ? A. Yes.

"Q. How far? A. Clear in.

"Q. And then what happened? A. He told me to get in the back seat because he couldn't do it in the front." She further stated that she was crying and did not know what she was doing or how she got in the back seat, but got back there and that the same thing continued there as in the front seat; that he just forced his male organ in her and that when he finished that she was bleeding and that he told her to be careful not to get blood on the seat and that he took her underclothes and wiped the seat.

On cross-examination counsel made many attempts to show by the prosecutrix that there were two separate acts of intercourse between witness and the defendant. In this he was unsuccessful. There was no evidence of any appreciable interval between the acts of penetration in the front seat and the continuance in the back seat. Witness stated that the defendant after five or ten minutes in the front seat made her get in the back seat because "he said he couldn't do it in the front". Clearly indicating that he was not having a satisfactory experience there due no doubt to the lack of room and the difficulty of penetration, because Dr. Arrendiell, who examined witness soon after the act, testified that although there were two distinct lacerations with oozing of blood, that he had some difficulty inserting his index finger in making the examination. Defendant therefore sought greater freedom in the rear seat and there continued the act until gratified. The record indicates that defendant was around fifty years of age and it would indeed have been a miracle if the defendant could have completed an act in the front seat of the car and then moved to the back seat and immediately commenced and completed a second act. That would be contrary to nature. The defendant did not testify. A study of the entire record compels the conclusion that but one act of sexual intercourse was had between defendant and prosecutrix and therefore but one crime was charged and the proof showed but one crime committed. *Beasley v. State*, 94 Okl.Cr. 353, 236 P.2d 263.

Making it even more unlikely that the fifty year old defendant in this case had successfully carried out, completed or consummated his unlawful intent in this case when he was interrupted by being hit in the head with a rock, is the rather remarkable fact that his matured virility had already been tested by the prior act of intercourse with the lady who wielded the rock.

This was not the most aggravated case of rape that has come before the Court. While all rape is bad and none should go unpunished the facts suggest that the prosecutrix and her friend were not as attentive to their own well being as women not wishing to attract unwanted sexual attention from strange men should be. While unattended on Charlotte Avenue (the Nashville counterpart of Memphis' Beale Street and Chattanooga's Ninth Street) they accepted a stranger's late night invitation to get in his automobile and accompany him to a main thoroughfare that he could easily have been directed to by the simple instruction to make one right hand turn.

If nothing else it has become traditional in Tennessee in sexual assault cases, whether rape, carnal knowledge, crimes against nature, or incest, for the prosecution to seek and obtain only one conviction even though

the course of the proscribed conduct involving a single victim may have (as in the case of incest for example) continued literally for years until exposed. Many of these cases have involved little children and other victims more helpless in their plights than the foolhardy actions of the two adult females in this case suggest they were. If we are to depart from the well established practice described in *Patmore, supra,* and the many other cases in which single convictions have resulted from repeated acts of sexual criminality, I would wait for a case in which the crime was of a more aggravated nature.