IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 18, 2020

## WILLIAM ROLANDUS KEEL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County
No. 2013-A-673      Angelita Blackshear Dalton, Judge**

_____

### No. M2019-00612-CCA-R3-PC
_____

A Davidson County jury convicted the Petitioner, William Rolandus Keel, of two counts of rape of a child, and the trial court ordered consecutive thirty-year sentences for each conviction, for an effective sentence of sixty years in the Tennessee Department of Correction. On appeal, this court affirmed the judgments. *State v. William Rolandus Keel*, No. M2016-00354-CCA-R3-CD, 2017 WL 111312 (Tenn. Crim. App., at Nashville, Jan. 11, 2017), *perm. app. denied* (Tenn. April 13, 2017). The Petitioner timely filed a *pro se* post-conviction petition and an amended petition through appointed counsel. After hearings on the petition, the post-conviction court denied relief. On appeal, the Petitioner asserts that the post-conviction court failed to provide him a full and fair post-conviction hearing. He further maintains that trial counsel rendered ineffective assistance of counsel. After review, we affirm the post-conviction court on the Petitioner's various motions, but conclude that the post-conviction court improperly limited the Petitioner's right to testify at the third part of the post-conviction hearing. Accordingly, we remand the case for a hearing to allow the Petitioner the opportunity to provide testimony concerning the allegations in his petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part, Reversed in Part and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

William Rolandus Keel, Whiteville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Tammy Meade, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION
## I. Facts

A Davidson County grand jury indicted the Petitioner for two counts of rape of a child. The first trial was held in March 2015 and resulted in a mistrial due to a deadlocked jury. The Petitioner was represented by an attorney ("Counsel") during this trial. Following the second trial, at which the Petitioner was not represented by counsel, in December 2015, the jury convicted the Petitioner as charged. This court summarized the facts of the case in the opinion on direct appeal as follows:

> [The victim], was born in June 2000 and lived with her grandparents and her younger siblings in Nashville. At some point in 2011 or early 2012 when the victim was either 10 or 11 years old, the victim and the [Petitioner], who was her then-stepfather, were playing the board game Monopoly in the [Petitioner]'s bedroom; the bedroom was located on one side of the duplex owned by the victim's grandmother. During the course of the game, the [Petitioner] and the victim "came up with a bet" that if the victim won, she would "get ungrounded," and if the [Petitioner] won, he could "do whatever." After the [Petitioner] won the game, he instructed the victim to turn around. When he told her to turn back toward him, his genitals were exposed. The [Petitioner] forced the victim to sit on the ground, used his hands to forcibly open her mouth, and he placed his penis inside her mouth. The victim could not recall the length of time of the assault, and she did not see the [Petitioner] ejaculate. The [Petitioner] told the victim "not to tell anybody or it would happen again." Following the assault, the victim returned to her grandmother's side of the duplex. She testified that she told no one because she "was too scared . . . of what he said."
>
> The victim testified that the second incident occurred at the residence of the [Petitioner] and the victim's mother when the victim was "[a]round 11" years of age. The [Petitioner] came to the victim's grandmother's house one morning to drive the victim to school, and while en route to school, the victim told the [Petitioner] that she needed to use the restroom. The [Petitioner] stopped at the house in Donelson. When the victim came out of the bathroom, the [Petitioner] was "standing right there." She attempted to shut the bathroom door, but the [Petitioner] pushed it open, causing the victim to fall to the floor. The [Petitioner] had again exposed his genitals and forced his penis into the victim's mouth. The victim denied that she saw the [Petitioner] ejaculate, and she testified that this assault did not last "too long" because she "had to get to school."

The [Petitioner] then drove the victim to school, and the victim did not immediately tell anyone about the assault because she "was scared that he would do it again."

The victim eventually informed her grandmother, C.F., that the [Petitioner] had "made [her] put his private part in [her] mouth." C.F. then contacted law enforcement officers.

Denise Alexander, a forensic social worker with Our Kids Clinic, conducted a pediatric forensic medical examination of the victim on March 22, 2012. Ms. Alexander found the victim to be "outgoing and friendly" until Ms. Alexander mentioned the [Petitioner]'s name, at which time the victim "became very quiet and stated [that] she didn't like him very much." At that point, the victim "refused to speak about [the [Petitioner] any further." The victim denied that anyone had ever touched her inappropriately. Ms. Alexander explained that such denials are "not uncommon" during interviews with suspected child sexual abuse victims.

Lori Littrell, a physician assistant at Our Kids Clinic, performed the physical portion of the victim's forensic medical examination. Ms. Littrell found no "trauma or visible injury" to the victim, which she testified was not uncommon. Ms. Littrell testified that, because the time period from the victim's initial disclosure to C.F. until the victim's examination was greater than 72 hours, she knew "the likelihood of recovering any type of DNA" would be "pretty much non-existent."

Charlsi Legendre, senior forensic interviewer with the Nashville Children's Alliance, testified that her organization provides forensic interviews and counseling services for minor victims of sexual abuse and other victims of severe physical abuse and neglect. Ms. Legendre explained that one of her former employees had conducted a forensic interview of the victim in May 2012. Through Ms. Legendre's testimony, the State introduced into evidence and played for the jury a video recording of the victim's forensic interview, during which the victim described the incidents of sexual abuse perpetrated by the [Petitioner] following the game of Monopoly and inside the bathroom at the [Petitioner]'s house.

With this evidence, the State rested. Following the trial court's denial of the [Petitioner]'s motion for judgments of acquittal and a *Momon* colloquy, the [Petitioner] elected not to testify but did choose to present other proof.

- 3 -

Kenneth Hardy testified that he had been previously employed as a case manager with the Department of Children's Services ("DCS"). Mr. Hardy stated that, on June 29, 2011, he conducted a home visit at the residence of C.F. and spoke with the victim. Mr. Hardy explained that "[s]omeone reported to [DCS] something concerning these children" and that he was the case manager assigned to conduct "a physical view of the children in their home." When Mr. Hardy interviewed the victim, she told him that she was not afraid of the [Petitioner]; that she had received "a whooping with a paddle" approximately two years prior but that she had never been injured; and that her mother was currently incarcerated. Mr. Hardy testified that the victim did not mention anything about sexual abuse during the interview.

Rashondalyn Nixon testified that she had been a case manager with DCS in 2012 and that she had been present on the night that the victim accused the [Petitioner] of sexual abuse. Ms. Nixon reviewed her notes from her interview with the victim and testified that, with respect to the Monopoly incident, the victim stated that she had lost the game and the [Petitioner] "made her look at his body part."

*William Rolandus Keel*, 2017 WL 111312, at *1-2. Following the jury's conviction of the Petitioner as charged, the trial court ordered the Defendant to serve an effective sentence of sixty years. On appeal, this court affirmed the judgments. *Id.* at 1.

The Petitioner timely filed a *pro se* post-conviction petition and later an amended petition through appointed counsel.[1] The post-conviction court held hearings over three days: September 14, 2018, February 6, 2019, and February 21, 2019.

### a. September 14, 2018 Hearing

Counsel testified that he was appointed to represent the Petitioner on the rape of a child charges and that he represented the Petitioner through the first trial that resulted in a hung jury and mistrial. After the mistrial, the Petitioner asked the trial court to appoint Frank Mondelli, and Counsel transferred the Petitioner's file to Mr. Mondelli, who was also representing the Petitioner on a civil matter. At some point, Mr. Mondelli's representation of the Petitioner on the rape charges ended, and the trial court requested Counsel serve as "elbow counsel" for the Petitioner's second trial due to his familiarity

---

[1] At some point after the filing of the amended petition but before the first hearing, "appointed counsel" became post-conviction "elbow counsel."

- 4 -

with the case. Counsel agreed, and the Petitioner represented himself during the second trial and was convicted. Following the second trial, the Petitioner asked Counsel to represent him on the motion for new trial and appeal, and Counsel agreed.

About serving as "elbow counsel" during the second trial, Counsel said that he largely viewed his role as a resource for the Petitioner should the Petitioner need assistance. He recalled an issue that arose during the second trial related to introduction of a recorded police interview with the Petitioner. Based upon Counsel's involvement with the first trial, he was aware that portions of the interview were ruled inadmissible and that the State had created a redacted copy for trial; however, during the second trial, when the State played the recording, Counsel realized that it was the unredacted recording and intervened. The trial court gave the jury a curative instruction, and the State played the redacted version of the interview. He explained that he believed that it was an oversight where the State "simply pulled the wrong CD." Other than this involvement, Counsel "had no interaction in the second trial."

Counsel testified that, following the conviction in the second trial, he began representing the Petitioner at the Petitioner's request. He consulted with the Petitioner about various appellate issues prior to filing the appeal. Counsel stated that the Petitioner "correspond[ed] with [him] regularly," but Counsel did not specifically recall a request for "an amended appeal." He recalled the Petitioner identifying the introduction of the unredacted recording as possible prosecutorial misconduct, but Counsel did not raise it on appeal. He explained that he was uncomfortable asserting prosecutorial misconduct based upon an inadvertent mistake. Furthermore, he believed any error was cured by the trial court's instruction to disregard the incorrect recording.

Counsel testified that he did not recall the Petitioner asking him to raise, in either the motion for new trial or the appeal, the trial court's denial of the Petitioner's request for transcripts from the first trial. Neither did he recall any discussion at the second trial during which the Defendant was denied transcripts from the first trial. Nonetheless, Counsel did not believe the denial of trial transcripts would have been an appealable issue because the Petitioner "was provided with the entirety of the transcripts."

Counsel recalled a recording of a phone call ("Phone Call Recording") that the Petitioner and his wife placed to the victim. During the conversation, the Petitioner and his wife asked the victim "why would you say this about . . . [the Petitioner?]" Counsel reviewed the Phone Call Recording "a lot" and, after determining that this recording was not favorable to the Petitioner, he chose not to introduce it during the first trial. Counsel did not recall the Petitioner attempting to introduce the Phone Call Recording during the second trial but noted that he was unaware of what motions had been filed with regard to the recording before he served as "elbow counsel." He did not recall raising any issue

about the Phone Call Recording in the motion for new trial or the appeal. Further, he acknowledged that he did not raise sufficiency of the evidence on appeal but rather chose to focus on sentencing.

Counsel testified that the trial court admitted into evidence a video recording of the victim's interview at the second trial, but he did not recall whether the Petitioner objected to the introduction of the video interview or whether Counsel raised it in the motion for new trial and on appeal. Counsel did, however, challenge the trial court's exclusion of expert testimony from Dr. William Bernet.

On cross-examination, Counsel testified that he had been practicing law for thirteen years and, since 2010, a large portion of his practice was criminal law. Counsel estimated that he spent approximately 800 hours working on the Petitioner's case and considered himself "well versed in every aspect." Counsel stated that after sitting through the second trial, based on his experience, he raised every issue he believed was "ripe" for the motion for new trial and appeal.

### b. February 6, 2019 Hearing

The post-conviction court began the hearing by stating, "We docketed this case because [the Petitioner] had filed a number of motions and requests that I think needed some clarity." The post-conviction court acknowledged that the Petitioner was proceeding *pro se* and confirmed post-conviction "elbow counsel's" role in the hearing. Post-conviction "elbow counsel" offered that the hearing might run more smoothly if he "ask[ed] [the Petitioner] to testify for clarity." Although not typical for a motion hearing, the post-conviction court agreed, and post-conviction "elbow counsel" questioned the Petitioner about each of the following motions.

### *Motion to Inspect Grand Jury Minutes and Recordings*

The Petitioner confirmed that he had filed a motion to inspect the grand jury minutes and recordings pertaining to his indictment. He explained that he wanted this information because he believed that Detective Farrell had perjured himself during the second trial. During the second trial, the Petitioner asked Detective Farrell about his knowledge of the indictments and whether he testified before the grand jury. Detective Farrell indicated that he did not "go before the grand jury" and did not "know about Indictments." The Petitioner said that the True Bill contained Detective Farrell's signature; therefore, Detective Farrell had committed perjury. Further complicating his ability to prove this allegation, the Petitioner stated that this line of questioning was "missing" from the transcripts of the second trial and thus he was requesting that the trial court provide him a video or audio recording of the second trial.

On cross-examination, the Petitioner agreed that the law provided that "grand jury minutes and grand jury testimony does not have to be recorded." The Petitioner was unaware, however, that grand jury testimony was not recorded in Davidson County. The Petitioner referred to "a document from Channel 4 news," indicating that there was a rule that allowed for a new hearing if the recording device was inaudible or malfunctioned. The post-conviction court informed the Petitioner that the rule addressed in the news story related to preliminary hearings and not grand jury proceedings. The State then asked the Petitioner how this claim proved ineffective assistance of counsel, and the Petitioner replied, "Well, this is, I mean, I don't know are we having a PCR hearing today?" To which, the post-conviction court responded, "No. We are not having a PCR hearing today." The post-conviction court stated that it was an "evidentiary hearing."

After a few more questions from the State, post-conviction "elbow counsel" succinctly summarized the Petitioner's position on this motion stating, if the recordings exist, "he is asking for a copy of it." The State responded that grand jury testimony was not recorded in Davidson County and therefore there was nothing to provide to the Petitioner. The post-conviction court denied the motion, finding that there was no recording and that the State was not required to record or provide the recording to a defendant.

### *Motion to Obtain a Recording of the First and Second Trial*

Next, the post-conviction court addressed the Petitioner's motions to obtain "audio with video" of the first and the second trial. The Petitioner contended that he needed recordings of both trials to show that portions of the trial testimony were missing from the trial transcripts. The post-conviction court found that the Petitioner had transcripts from both trials and the transcripts were certified. The post-conviction court denied the motions.

### *Motion to Obtain a Recording of the July 25, 2015 Hearing*

The Petitioner next was asked about his "motion to obtain the audio with video of the July 25th hearing." The Petitioner explained that, during the July 25, 2015 hearing, the trial court told Counsel to provide the State with a copy of the Phone Call Recording, the content of which the Petitioner interpreted as the victim recanting. Despite this instruction, Counsel failed to do so, preventing the Petitioner from presenting the Phone Call Recording during the second trial. The Petitioner explained that he wanted the recording of the July 25, 2015 hearing to show that the trial court had told Counsel to provide the State with the Phone Call Recording to support his claim that Counsel was ineffective for failing to do so. The post-conviction court denied the Petitioner's request

for a recording of the hearing but suggested that he request a copy of the hearing transcript.

The State then questioned the Petitioner, who agreed that Counsel was questioned about the Phone Call Recording during the previous, September 14, 2018 hearing. He further agreed that Counsel had testified that he had reviewed the recording and did not seek to introduce the Phone Call Recording because the content was not beneficial to the Petitioner. The State then offered to provide the second trial transcript for further discussion of this motion at the next hearing. The post-conviction court retracted the earlier ruling denying this motion and stated that it would take this motion under advisement.

## *Writ of Error Coram Nobis*

After finishing the review of the Petitioner's pro se motions, the Petitioner inquired about whether "the Error Coram Nobis" was part of the post-conviction or if it was "separate." The following exchange occurred:

| | |
|---|---|
| The Court: | I've just, this is the first that I have heard of it. I haven't, I didn't even know that there was an Error Coram Nobis had been filed. |
| The Petitioner: | Because, I thought, I thought when (interrupted.) |
| [The State]: | When all of this first started he had filed an Error Coram Nobis which we held these records are not newly discovered evidence and it should be denied, but then [post-conviction "elbow counsel"] said we will just handle it as part of the PCR. |
| The Court: | Well, I was, was there ever a ruling, because this was filed back in 2017? |
| [The State]: | There has never been a ruling on the ECN. |
| The Court: | There has never been a ruling made on it? |
| [The State]: | No. |
| The Court: | Okay. |

| [The State]: | No. |
| --- | --- |
| The Court: | Well, there needs to be a ruling on it and I will rule on it. |

The record contains a *pro se* motion filed July 28, 2017, titled "MOTION TO TREAT NEW EVIDENCE IN POST-CONVICTION AS ERROR CORAM NOBIS PETITION." The post-conviction court said that it was taking the "error coram nobis" under advisement and would issue a subsequent written order.

### *Recalling Counsel*

Post-conviction "elbow counsel" then asked if the State still opposed the Petitioner recalling Counsel for additional testimony, and the State confirmed its continuing opposition. The Petitioner stated that he wanted to recall Counsel to ask "About the [Phone Call R]ecordings and why he didn't release them over to the prosecution." The post-conviction denied the Petitioner's request to recall Counsel because Counsel had already been questioned about the Phone Call Recordings during the September 14, 2018 hearing.

### c. February 21, 2019 Hearing

The post-conviction court began the hearing by addressing the motion for a writ of error coram nobis. The post-conviction court stated that it had considered the school records showing the victim's enrollment in a Wilson County public school. The Petitioner asserted that evidence of the Wilson County school enrollment records could have been used to attack the victim's credibility because she had testified that she lived elsewhere. The post-conviction court concluded that the school records were not newly discovered evidence because the Petitioner was aware they existed at the time of the trial and failed to obtain the records at that time. The post-conviction court then denied the Petitioner's "motion" for a writ of error coram nobis.

The post-conviction court then returned to the Petitioner's motion requesting a recording of the July 25, 2015 hearing. The post-conviction court stated that it had reviewed the transcript of the second trial. The post-conviction court found that the trial court had initially denied the Petitioner's request to introduce the Phone Call Recording at trial because the State had not received a copy but that the parties had litigated the issue nonetheless. The transcript indicated that the State and the trial court had reviewed the Phone Call Recording after court adjourned. The following day, the trial court found that the victim's statement during the recorded telephone conversation was not inconsistent but consistent with her trial testimony and therefore could not be admitted

under the Rules of Evidence. Based upon the review of the transcript of the second trial, the post-conviction court denied the Petitioner's "motion to obtain the audio with video of the July 25th hearing."

After the post-conviction court addressed the matters it had previously taken under advisement, the Petitioner presented further testimony in support of his post-conviction petition. Charles Hale testified that he was the Petitioner's case manager at the Whiteville Correctional Facility from June 2017 until "about September." Mr. Hale stated that he placed telephone calls to Counsel at the Petitioner's request on August 16, 2017, and August 24, 2017.[2] On neither occasion was Mr. Hale able to speak with Counsel, so Mr. Hale left a message instead. Counsel never returned the phone calls. Mr. Hale stated that he was unaware of any video conference calls arranged between Counsel and the Petitioner or any in-person visits. On cross-examination, Mr. Hale agreed that he would not have been made aware of any written communication between Counsel and the Petitioner.

After Mr. Hale's testimony concluded, post-conviction "elbow counsel" wanted to call the Petitioner to testify and the following exchange with the post-conviction court occurred:

| [PC Elbow Counsel]: | . . . I am not sure exactly where we are as far as if we have covered everything, but I don't, I do know that [the Petitioner] wanted to testify as to what he wanted to have put in the appeal. Would the Court allow me to question him? |
| --- | --- |
| The Court: | Well, he's, he was given that opportunity. He has been on the stand. He was on the stand back in, when we started this PCR, wasn't he? Back in September? |
| [PC Elbow Counsel]: | He has, but I didn't ever specifically ask him what he wanted, um. |
| The Court: | Well, that is the whole purpose of him testifying in his PCR. |

---

[2] On March 16, 2019, "elbow counsel" filed an affidavit from Mr. Hale correcting Mr. Hale's testimony. The affidavit stated that Mr. Hale placed telephone calls to Counsel on August 16, 2016, and August 22, 2016, instead of the dates he testified to at trial – August 16, 2017, and August 24, 2017.

| [PC Elbow Counsel]: | Well. |
| --- | --- |
| The Court: | That is the whole purpose. |
| [PC Elbow Counsel]: | I think we are kind of piecing this around a little bit, Your Honor, so. |
| The Court: | Well, if he wants, no, the only thing that I will give him an opportunity to respond to would be anything as it relates to Mr. Hale's testimony, beyond that, no, because he has been given that opportunity. . . . |
| | . . . . |
| | Now, do you have anything as it relates to [Mr. Hale]'s testimony? |
| [PC Elbow Counsel]: | No, Your Honor. |

In a subsequent written order, the trial court denied post-conviction relief, finding that the Petitioner had not shown that Counsel was ineffective. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner asserts that the post-conviction court denied him a full and fair hearing. He also maintains his ineffective assistance of counsel claims. The State responds that the Petitioner received a full and fair post-conviction hearing and is not entitled to relief as to his ineffective assistance of counsel claims.

## A. Due Process

The Petitioner argues that he was denied a full and fair hearing because the post-conviction court denied his motions to procure evidence and his request to recall Counsel as a witness. The Petitioner also alleges that the post-conviction court prevented him from testifying at the February 21, 2019 hearing. The State responds that the Petitioner was given the opportunity to call witnesses and present evidence and, therefore, is not entitled to relief. We agree with the State that the post-conviction court correctly disposed of the evidentiary motions, the error coram nobis claim, and the request to recall Counsel; however, the Petitioner was not allowed an opportunity to testify about

Counsel's alleged ineffectiveness in his representation of the Petitioner during the motion for new trial and on appeal.

It is Petitioner's burden to prove his allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f). Thus, it is abundantly clear that a petitioner is entitled to a full and fair hearing in order to meet this burden. Due process in the post-conviction context requires that "the defendant have 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Stokes v. State*, 146 S.W.3d 56, 61 (Tenn. 2004) (quoting *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995)). Specifically, a full and fair hearing requires "the opportunity to present proof and argument on the petition for post-conviction relief." *House*, 911 S.W.2d at 714; *see also* T.C.A. § 40-30-106(h) ("A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence.").

Under the circumstances of this case, we cannot conclude that the Petitioner received a full and fair hearing. The Petitioner was questioned by post-conviction "elbow counsel" at the February 6, 2019 hearing. The transcript indicates that this hearing was set for the post-conviction court to seek clarification on a number of motions filed by the Petitioner. Further, the post-conviction court specifically told the Petitioner that the February 6, 2019 hearing was "not a post-conviction hearing." The post-conviction court identified each motion, and the Petitioner was questioned about what he sought to obtain through each motion. During this questioning, the State asked several times how the item sought through the motion related to his post-conviction claim. The discussion, however, was limited to the motions and not a full discussion of the Petitioner's post-conviction claims. At the subsequent February 21, 2019 hearing, the post-conviction court resolved the remaining motion and petition for a writ of error coram nobis before the post-conviction evidentiary hearing resumed. Following the Petitioner's witness, post-conviction "elbow counsel" sought to call the Petitioner to testify, and the post-conviction denied the Petitioner the opportunity to testify, stating that the Petitioner had already testified at the February 6, 2019 hearing. We acknowledge the convoluted course of this petition and the challenges attendant to bifurcated hearings; nonetheless, the Petitioner was never allowed the opportunity to testify about the reasons the Petitioner believed Counsel was ineffective at trial as it related to the motion for new trial and on appeal.

Although we are remanding the case to allow the Petitioner the opportunity to testify, in an attempt to assist the post-conviction court in resolving this case expeditiously, we address the Petitioner's challenges to the post-conviction court's denial of the Petitioner's: (1) motion to inspect the grand jury minutes and recording of indictments, (2) motion to obtain a recording of the first and second trials, (3) motion to

obtain a recording of the July 2015 hearing; and (4) request to recall Counsel to testify at the third hearing.

It is within the court's discretion to determine whether the proffered evidence is relevant. *State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995). In this case we conclude that the post-conviction court acted within its discretion in denying each of these motions. The Petitioner sought to inspect the grand jury minutes and recording of the indictments. The record reflects that in denying the Petitioner's motion, the trial court found he was not entitled to grand jury records. With certain exceptions, grand jury proceedings are to remain secret. *See* Tenn. R. Crim. P. 6(k)(1) (stating that grand jury proceedings should be kept secret). The State is not required to record grand jury proceedings and, as such, did not record the proceedings for which the Petitioner sought a recording. Thus, the State had nothing to provide to the Petitioner.

The Petitioner also sought a recording of both trials; however, the Petitioner possessed two certified copies of the trial transcripts. The Petitioner's seeks the recordings to show a discrepancy between the recording and the transcript. The Petitioner, however, presented no evidence, other than his bare assertion, to support the allegation that the transcripts were flawed. The post-conviction court properly denied this motion.

The Petitioner sought a recording of the July 2015 hearing to show that the trial court ordered Counsel to provide the State with a copy of the Phone Call Recording and because Counsel failed to do so, the Petitioner was unable to introduce the victim's inconsistent statements at trial for purposes of impeachment. The post-conviction court reviewed the second trial transcript that addressed the issue of admission of the Phone Call Recording. The transcript revealed that initially, the trial court denied introduction of the evidence because the State had not received a copy. Nonetheless the trial court and State both reviewed the recording, and the trial court found that the victim's statements were not inconsistent statements and therefore inadmissible under Tennessee Rule of Evidence 803. The trial court's ruling on this issue negated the need for transcription of the hearing, thus the post-conviction court properly denied the motion.

Finally, the post-conviction court acted within its discretion when it denied the Petitioner's request to recall Counsel at the February 21, 2019 hearing. Counsel had already testified and been questioned about the subject that the Petitioner sought to re-question him about. The trial court has discretion in determining whether it will allow a party to recall a witness, and it does not constitute error absent an abuse of discretion. *State v. Caughron*, 855 S.W.2d 526, 539 (Tenn. 1993); *Lillard v. State*, 528 S.W.2d 207, 212 (Tenn. Crim. App. 1975). We cannot conclude that the post-conviction court abused its discretion in denying the request to recall Counsel for the purpose of questioning on a

subject Counsel had already testified about during the first part of these post-conviction proceedings.

Accordingly, we conclude that the post-conviction court's rulings on each of these issues did not deprive the Petitioner of a full and fair post-conviction hearing.

## B. Ineffective Assistance of Counsel

Our decision to remand this case for a hearing at which the Petitioner may testify about Counsel's representation during the motion for new trial and on appeal, precludes us from review of this issue until the record has been fully developed.

## III. Conclusion

Based upon the foregoing, the judgment of the post-conviction court is affirmed in part, reversed in part, and this case is remanded for a hearing to allow the Petitioner to testify concerning the allegations in his petition. After an order is entered in compliance with the requirements of the post-conviction statutes and this opinion, the losing party shall be entitled to initiate an appeal in accordance with the Tennessee Rules of Appellate Procedure.

_____
ROBERT W. WEDEMEYER, JUDGE